**In re Hal G. KUNTZ.**

No. 02–0375.

Supreme Court of Texas.

Argued Sept. 10, 2003.

Decided Dec. 19, 2003.

Sallee S. Smyth, Joan F. Jenkins, Short & Jenkins, L.L.P., D. Gibson Walton, James D. Thompson III, Catherine B. Smith, Marie R. Yeates, Vinson & Elkins, L.L.P., Kent A. Radford, Pillsbury Winthrop LLP, Houston, for relator.

Charles G. King, King & Pennington, L.L.P., Houston, Carl D. Rosenblum, Jones, Walker Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for amicus curiae.

Berry D. Bowen, Charles A. Sharman, Billy Shepherd, John D. Vogel, Cruse, Scott, Henderson & Allen, L.L.P., Thomas R. Conner, Conner & Lindamood, P.C., Houston, for respondent.

Justice SMITH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice JEFFERSON, Justice SCHNEIDER, Justice WAINWRIGHT, and Justice BRISTER joined.

In this mandamus proceeding, we decide a question of first impression regarding the proper interpretation and application under the Texas Rules of Civil Procedure of the phrase "possession, custody, or control." *See* TEX.R. CIV. P. 192.3(b), 192.7(b). The respondent trial court, in an action filed against relator Hal Kuntz in his individual capacity, ordered Kuntz to produce documents that he had access to at his place of employment. It was undisputed that Kuntz's employer had actual physical possession of the relevant documents, that the documents were owned by a client of Kuntz's employer, and that the client claimed the documents contained its privileged trade secrets. In this Court, Kuntz asserts that his mere ability to access the documents does not constitute possession, custody, or control. We agree and, accordingly, conditionally grant the requested writ.

I

█ The Court has jurisdiction over this original proceeding under Article 5, Section 3 of the Texas Constitution and Section 22.002(a) of the Government Code. Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal. *In re Ford Motor Co.,* 988 S.W.2d 714, 718 (Tex.1998);

*Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992).

■ A trial court's determination of a factual issue is entitled to deference in a mandamus proceeding and should not be set aside unless it is clear from the record that only one decision could have been reached. *GTE Communications v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993); *Walker*, 827 S.W.2d at 839–40. In contrast, a trial court has no discretion in determining what the law is or applying the law to the facts. Therefore, a failure by the trial court to analyze or apply the law correctly, as when a discovery order conflicts with the Texas Rules of Civil Procedure, constitutes an abuse of discretion. *Walker*, 827 S.W.2d at 840; *Lindsey v. O'Neill*, 689 S.W.2d 400, 402 (Tex.1985). A party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942–43 (Tex.1998); *Walker*, 827 S.W.2d at 843.

## II

Texas Rule of Civil Procedure 192.3 is entitled "Scope of Discovery." Rule 192.3(a) provides: "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action...." TEX.R. CIV. P. 192.3(a). Rule 192.3(b) provides:

A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents and tangible things ... that constitute or contain matters relevant to the subject matter of the action. A person is required to produce a document or tangible thing that is within the person's possession, custody, or control.

TEX.R. CIV. P. 192.3(b).

Texas Rule of Civil Procedure 192.7(b) sets forth the following definition: "*Pos-session, custody, or control* of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." TEX.R. CIV. P. 192.7(b) (emphasis in original); *see also GTE Communications*, 856 S.W.2d at 729 ("The right to obtain possession is a legal right based upon the relationship between the party from whom a document is sought and the person who has actual possession of it.").

Under Texas Rule of Civil Procedure 196.1, a party may request that another party to the pending action produce a document or tangible thing. Texas Rule of Civil Procedure 205 governs discovery from nonparties, including a request for production of a document or tangible thing.

## III

The live pleading in the underlying suit, Vesta Kuntz's Sixth Amended Petition to Enforce Division of Agreement Incident to Divorce, For Declaratory Judgment or, Alternatively to Clarify or Reform Agreement, states:

*Parties, Jurisdiction and Venue*

2. Vesta L. Kuntz, Movant, is an individual residing in Harris County, Texas.

3. Hal G. Kuntz, Respondent, is an individual residing in Harris County, Texas. His counsel is being furnished a copy of this pleading.

4. This Court has subject matter jurisdiction over this proceeding pursuant to ' 7.001 *et seq.* and ' 9.001 *et seq.* of the Texas Family Code.

*Factual Background*

5. On October 7, 1983 the parties were married. On June 30, 1999 the parties were divorced. The Court approved an

Agreement Incident to Divorce ("AID") as a just and right division of the parties' property. A true copy of the AID is attached as Exhibit "A." Paragraph 5.4 of the AID under the subheading "Future MOXY Royalty" provides as follows:

> Husband by virtue of employment or as a partner of CLK may earn additional interests in oil and gas leases and properties which Husband may acquire by assignment from McMoRan Offshore Exploration Co. ("MOXY") or its successors or predecessors in the future. All such interests which have not been assigned by MOXY shall be the property of Husband, except Wife will have the right to 25% of all overriding royalty interests, if any, from MOXY assigned to Husband after the date of divorce that results [sic] from projects on which CLK forwarded letters of recommendation to MOXY to drill during the marriage.

McMoRan Oil & Gas, L.L.C. ("MOXY"), successor to McMoRan Offshore Exploration Company, is an independent oil and gas company engaged in the exploration, development, and production of oil and gas. The company's operations are primarily conducted offshore in the Gulf of Mexico and onshore in the Gulf Coast area, and its offices are located in New Orleans. CLK Company, L.L.C. ("CLK") is MOXY's primary geological and geophysical consultant. CLK has offices in both New Orleans and Houston. MOXY is CLK's only client.

Hal Kuntz is a minority owner and the general manager of CLK. He works at CLK's Houston office. As general manager, Hal is in charge of CLK's day-to-day operations and answers only to the company's board, of which he is one of four members.

CLK is in the business of evaluating oil and gas prospects for MOXY. After evaluating a property, CLK creates and forwards to MOXY a letter of recommendation ("LOR") detailing its findings and recommendations. A copy of each LOR is traditionally maintained in both of CLK's offices. Hal and other CLK principals have unrestricted access to those copies.[1]

The consulting agreement between MOXY and CLK provides that data and information obtained or compiled by CLK for MOXY belongs exclusively to MOXY and prohibits disclosure of that data and information to a third party without MOXY's written consent. CLK's operating agreement obligates Hal to maintain the confidentiality of data and information acquired during his employment and prohibits him from disclosing it to a third party without the written consent of CLK's board.

In May 2001, Vesta filed a motion to compel discovery, requesting that Hal be ordered "[t]o produce all LORS that are 'positive' from October 7, 1983 (date of marriage) to June 30, 1999 (date of divorce) in an unredacted form." She had previously, pursuant to Texas Rule of Civil Procedure 196.1, requested that Hal produce "all the LORs written during the marriage."[2] In response to the motion, Hal asserted that he did not have posses-

---

**1.** Hal testified:
Q. Does CLK have copies of [the relevant LORs].
A. Yes, they do.
Q. You've certainly got access to them, don't you.
A. I can access them, but I don't control them.

**2.** Neither the request for production nor the response thereto is in the mandamus record.

sion, custody, or control of the documents and that the requested documents were MOXY's privileged trade secrets.

While the aforementioned motion was pending, Hal requested permission from both MOXY and CLK to release the relevant documents. MOXY and CLK, in separate letters, denied Hal's written request.[3] In August 2001, the letters were filed as exhibits in the trial court.

On September 18, 2001, a hearing was held on the motion to compel discovery. On December 11, 2001, the trial court signed an order resolving the motion. Hal was ordered to "produce all Letters of Recommendation for the period beginning on October 7, 1983 through June 30, 1999 generated by CLK Company or any of such company's partners or employees that contain a positive recommendation." Approximately 2,000 LORs satisfy the order's criteria for production.

In his petition for writ of mandamus, Hal requests that we: "(1) order Respondent to vacate the Order dated December 11, 2001, requiring Hal Kuntz to disclose MOXY's trade secrets; (2) vacate any finding that Hal Kuntz has possession, custody, or control of MOXY's trade secrets; and (3) grant Hal Kuntz such other and further relief to which he may be justly entitled."

## IV

Hal asserts that he does not have possession, custody, or control of the relevant letters of recommendation. Specifically,

Hal asserts that, in his individual capacity, he does not have physical possession of the requested documents and has no legal right to obtain physical possession of the documents from either CLK or MOXY. In sum, Hal argues that he "should not be ordered to produce documents in the physical possession of his corporate employer in this suit brought against him individually."

Noting that the "testimony in this case is unequivocal that the LORs were in Hal's offices and he could get them anytime he wants," Vesta asserts that "hal has the actual possession, custody and control of the documents, so he cannot refuse to produce the same." She does not argue that Hal has a legal right to obtain physical possession of the documents from either CLK or MOXY.

MOXY appeared as amicus in the courts below in support of Hal. In this Court, MOXY, also as amicus, asserts that "the trial court improperly circumvented the Texas Rules of Civil Procedure related to obtaining nonparty discovery and improperly infringed on MOXY's constitutional rights by depriving MOXY of its property without due process of law." In addition, MOXY argues:

Hal Kuntz, as an employee of CLK, lacks both physical possession of MOXY's trade secret LORs or any "right to possess" MOXY's trade secret LORs. At best, all that Hal Kuntz has is access to MOXY's trade secret LORs

---

**3.** The letter from CLK to Hal stated: "The Board of Managers of CLK Company, L.L.C., less yourself, has met to determine whether to grant your June 29, 2001 request to allow you to provide certain confidential data currently under CLK's care to a Houston Court. . . . Enclosed please find a copy of our July 12, 2001 written request to McMoRan eliciting a determination of their willingness to allow CLK to comply with your request for the release of confidential data. McMoRan's July 13, 2001 response is also enclosed that unequivocally denies our request and demands that our members and employees strictly comply with the confidentiality provisions in the MMR CLK retainer contract. We must therefore inform you that CLK Company, L.L.C. must deny you permission to provide any of McMoRan's data to any third party."

and that access is strictly limited to use of the LORs in furtherance of his employer's services performed for MOXY. Like a bank teller with access to cash in the vault, Hal Kuntz has neither possession nor any right to possess MOXY's trade secret LORs.

## V

■ Hal's mere access to the relevant letters of recommendation does not constitute "physical possession" of the documents under the definition of "possession, custody, or control" set forth in Texas Rule of Civil Procedure 192.7(b). *Cf. In re Grand Jury Subpoena (Kent)*, 646 F.2d 963, 969 (5th Cir.1981) ("The [employee's] subpoena, if upheld, would be illegal because it would direct her to produce documents not in her possession, custody, or control. Because [employee] had mere access, her compliance with the subpoena would have required that she illegally *take* exclusive possession of [her employer's] documents and deliver them to the grand jury.") (emphasis in original); *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501–02 (D.Kan.2001) (denying motion to compel defendant, president and minority shareholder of nonparty corporation, to produce nonparty corporation's documents in suit brought against defendant in his individual capacity). Thus, we conclude that the trial court abused its discretion in ordering Hal to produce the documents.[4]

■ If required to produce the relevant LORs, Hal would be forced to violate the confidentiality provisions contained in both CLK's operating agreement and the consulting agreement between MOXY and

CLK, potentially subjecting himself to a suit for significant damages. *See, e.g., IBP, Inc. v. Klumpe*, 101 S.W.3d 461 (Tex. App.—Amarillo 2001, pet. denied) (suit brought by employer against employee arising out of disclosure of trade secrets by employee in response to request for production). Because an appellate court would not be able to cure the trial court's discovery error, we further conclude that Hal does not have an adequate remedy by appeal.

Based on the foregoing, we conditionally grant the writ of mandamus and direct the trial court to vacate its December 11, 2001 order. We are confident that the trial court will promptly comply, and the writ will issue only if it does not.

Justice HECHT filed a concurring opinion, in which Justice OWEN, Justice SCHNEIDER, and Justice WAINWRIGHT joined.

Justice WAINWRIGHT filed a concurring opinion.

Justice O'NEILL concurred in the judgment only.

Justice HECHT, joined by Justice OWEN, Justice SCHNEIDER and Justice WAINWRIGHT, concurring.

I agree that Vesta Kuntz is not entitled to have her ex-husband, Hal Kuntz, produce letters of recommendation ("LORs") that his employer prepared for its client because he does not have "possession, custody, or control" of the documents within the meaning of Rule 192.3(b) of the Texas Rules of Civil Procedure. But Vesta has not merely sought discovery from the

---

4. Because MOXY owns and CLK has actual physical possession of the relevant LORs, Vesta may seek nonparty production of the documents from either entity. *See* TEX.R. CIV. P. 205. If Vesta seeks production of the documents from CLK, MOXY may move for a

protective order. *See* TEX.R. CIV. P. 192.6(a) ("A person from whom discovery is sought, and any other person affected by the discovery request, may move ... for an order protecting that person from the discovery sought."); *see also* TEX.R. CIV. P. 176.6(e).

wrong person. She is not entitled to production of the LORs because they are privileged trade secrets under Rule 507 of the Texas Rules of Evidence and she has not established, as she must, that they are essential to the fair adjudication of her claims. So while I join fully in the Court's opinion, I would reach the same result for this additional reason.

Hal's employer, CLK Company, L.L.C., evaluates oil and gas prospects for its client, McMoRan Oil & Gas, L.L.C. ("MOXY"), detailing its findings in letters of recommendation to MOXY. Vesta and Hal's agreed divorce decree gives Vesta

> 25% of all overriding royalty interests, if any, from MOXY assigned to [Hal] after the date of divorce that results [sic] from projects on which CLK forwarded letters of recommendation to MOXY to drill during the marriage.

Vesta sued Hal, alleging that he had not paid her what was due by this provision. When Hal asserted that the extent of his obligation can be determined only by the precise language of each LOR, Vesta requested Hal to produce all of the LORs CLK sent MOXY during the Kuntzes' fifteen-year marriage—over 1,700 of them, according to her—regardless of whether they pertain to prospects MOXY has drilled or will ever drill. Hal responded that the LORs are privileged trade secrets and agreed to produce only the LORs pertaining to prospects MOXY drilled. The trial court found that the LORs are privileged trade secrets but ordered Hal to produce them, subject to a confidentiality order.

Vesta argues that Hal failed to prove that the LORs are trade secrets because MOXY failed to protect the confidentiality of the LORs and the information they contain. She cites evidence showing that MOXY shares the information in the LORs with its competitors, subject to confidentiality agreements. She also points out that MOXY did not obtain a confidentiality agreement from each of its employees, or for that matter from Hal's expert witness before he was shown redacted copies of 155 LORs, and that MOXY lost some of the LORs B possibly by including them in an inadvertent transfer of thousands of files to an outside entity. Hal, however, cites evidence showing MOXY's efforts to protect its trade secrets. Information was disclosed only to those competitors solicited as potential investors, and then subject to confidentiality agreements and other protective measures. MOXY required CLK to seek permission before disclosing the LORs, and MOXY's recent consulting agreements included a confidentiality provision. Employee agreements, besides including non-compete clauses, required compliance with MOXY rules and regulations; further, only a limited number of MOXY employees had access to this information, and then, only at work. Hal also argues that an inadvertent transfer of LORs to an outsider, even if it actually occurred, should not result in a waiver of trade secret protection. At most, Vesta raises subsidiary fact issues about one factor used to analyze the existence of a trade secret.[1] She has not shown that the trial court erred in its determination.

Accordingly, to obtain discovery of the LORs Vesta must establish that they are "necessary or essential to the fair adjudication of the case," weighing her need for the information against the harm that may result from disclosure.[2] Vesta must "dem-

---

1. See *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).

2. *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex.2003) (citing *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 610–613 (Tex. 1998)).

onstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." [3]

Vesta does not dispute that MOXY will not drill all or even most of the prospects covered by the LORs, and Hal offered evidence that MOXY will drill at most five to fifteen a year. Hal argues that a LOR should be produced only when MOXY has assigned him an interest or drilled a well, events reflected in public filings with the Securities Exchange Commission or the Department of Interior's Mineral Management Service. At that point, after a prospect has been developed, no one claims that the information in a related LOR remains confidential. Vesta argues that immediate production of all LORs is necessary to determine which of them could result in payments to Vesta if MOXY should ever drill the prospects covered by the LORs. This, she says, is essential to a fair adjudication of the case for three reasons.

First, Vesta argues that producing LORs only when wells are drilled will necessitate litigating her right to a share of Hal's overriding royalty well by well. But she has not explained how production of all the LORs at once will eliminate future disputes over whether she is due a share of overriding royalty with respect to particular wells. Vesta must either trust Hal to pay her what is due under the divorce decree or else monitor MOXY's recorded assignments to him and drilling reports and inquire whether they have resulted in payments to him. Even if a review of all the LORs could reduce future disputes, Vesta has not shown how that reduction would justify the disclosure of a large amount of privileged information that Vesta concedes is completely irrelevant to her claims, since most LORs will never be a basis of any payments to Hal.

Second, Vesta argues that deferring production of the LORs until wells are drilled and Hal is paid an overriding royalty gives Hal a financial incentive to lie about the existence of relevant LORs in the future. It is one thing, she says, to produce LORs when no one knows whether they will ever be a basis of payments to Hal, and another after payments are made. But such suspicions do not present "a real, rather than a merely possible, threat" to a fair adjudication of Vesta's rights. Moreover, Vesta's access to LORs cannot be defeated by Hal alone; CLK and MOXY, who have access to the LORs, would also have to conceal their existence, something Vesta has not shown is probable.

Finally, Vesta argues that LORs may be lost, as some already have been, and evidence and testimony that may be necessary to explain them may become inaccessible as memories fade and witnesses are unavailable. But it appears that Vesta's claims depend largely on the language of the LORs themselves rather than on extraneous evidence. Again, even if some evidence might be lost, Vesta has not shown how that justifies disclosure of irrelevant trade secret information.

Because Vesta did not establish that the LORs are necessary to a fair adjudication of her claims, the trial court abused its discretion in ordering disclosure. For this additional reason I would direct the trial court to set aside its order.

Justice WAINWRIGHT, concurring.

In this case the Court decides whether a party may be ordered to produce documents containing trade secrets when the party does not own the documents or the

---

**3.** *In re Bridgestone/Firestone,* 106 S.W.3d at 733.

trade secrets and claims not to have possession, custody or control of them.

This discovery dispute arose in post-divorce proceedings between Vesta Frommer and Hal Kuntz. As a just division of the parties' property, Vesta and Hal entered an Agreement Incident to Divorce ("AID"), which the trial court approved. Under the AID, Vesta had "the right to 25% of all overriding royalty interests, if any, from MOXY assigned to Husband [Hal Kuntz] after the date of divorce that results from projects on which CLK forwarded letters of recommendation to MOXY to drill during the marriage." Hal was an owner and general manager of CLK Company, L.L.C. ("CLK"), which provided letters of recommendation ("LORs") to McMoRan Offshore Exploration Co. ("MOXY") of potential oil and gas exploration and drilling opportunities primarily in the Gulf of Mexico. Based on the AID, Vesta sought to obtain all of the approximately 1,800 LORs with positive recommendations that CLK sent to MOXY during her 15 year marriage to Hal. Hal, CLK, and MOXY objected.

The trial court in this case was asked to balance a myriad of interests. Vesta was not comfortable trusting Hal to produce only the LORs for the wells from which she was entitled to 25% of the overriding royalty, and, therefore, she sought all the LORs to monitor compliance with the AID. The dispute occurred when both MOXY and CLK instructed Hal not to produce the LORs to Vesta. The trial court found that the LORs contained trade secrets involving geological and seismic data and recommended locations where MOXY may drill oil and gas wells in the future. It is undisputed that neither Hal nor his employer CLK owned the LORs; they were MOXY's. Further, pursuant to their consulting agreement with MOXY, Hal and CLK were bound to use the documents and trade secrets only in furtherance of services performed for MOXY. Thus, the trial court had to balance protection of the trade secrets in MOXY's LORs with allowing Vesta the right to verify with information from those LORs that she had received 25% of the overriding royalty interests in producing wells assigned to Hal after recommendation by CLK. The trial court, after ordering production of redacted LORs, but being confronted with the possibility that some of the LORs may contain drilling recommendations that do not use the word "drill" (and thus may be subject to interpretation), ordered Hal to produce all the LORs containing positive recommendations, subject to a confidentiality agreement.

Further complicating this matter is Vesta's attempt to obtain the documents from Hal rather than their owner, MOXY. Vesta apparently joined MOXY as a "Nominal Respondent" in the trial court proceeding and later non-suited it. MOXY was not served with citation and asserts that it made no formal appearance in the case. The LORs were subpoenaed from MOXY, but the parties do not cite any order evidencing a ruling by the trial court concerning the subpoena. Nevertheless, MOXY, as a non-party, participated in the proceedings over the LORS, including filing written objections to the discovery requests, making arguments to the Court, objecting to evidence in evidentiary hearings and offering closing statements at the end of the hearings, along with the parties in the lawsuit. While it is unclear why Vesta sought the documents from Hal rather than MOXY, and notwithstanding our regard for the diligent inquiry and complex decisions made by the trial court, I agree with the Court's opinion. I do not disagree with the implication in the opinion of the Court that the documents should be obtained, if at all, from MOXY.

I note, however, that if this Court's decision had been adverse to MOXY's position, then as the proceeding continued in the trial court, MOXY may have had a difficult time attempting to obtain a different ruling. MOXY had notice and fully participated in the prior proceedings at the trial court over production of the LORs. Given the circumstances, a second bite at the apple may have been hard to come by.