Petitions for Writ of Mandamus Denied and Opinion filed September 23,
2004









Petitions for Writ of Mandamus Denied and Opinion
filed September 23, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00538-CV

____________

 

IN RE UNION CARBIDE CORPORATION,
CERTAIN TEED CORPORATION, THE DOW CHEMICAL COMPANY, GENERAL ELECTRIC COMPANY,
AND KELLY-MOORE PAINT COMPANY, Relators

____________

 

NO. 
14-04-00539-CV

_____________

 

IN RE EXXONMOBIL CORPORATION,
Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT
OF MANDAMUS

 



 

O P I N I O N

This consolidated mandamus proceeding
involves a pretrial docket control ruling by the Presiding Judge of the first
Multidistrict Litigation (MDL) Court in Texas, to which all








 asbestos cases
filed in Texas after September 1, 2003, have been transferred.[1]  As of May 7, 2004, more than 1,500 asbestos
cases had been transferred to the MDL Court.

Relators in this mandamus proceeding are
defendants in the asbestos-related lawsuits in the MDL Court.  The real parties in interest are plaintiffs
in the lawsuits. Certain of the relators filed a ADefendants= Motion to
Establish an Unimpaired Docket,@ and the remaining
relators filed pleadings in support of the motion.  The MDL Court denied the motion.

Standard
of Review

Mandamus is an
extraordinary remedy, available only when a trial court clearly abuses its
discretion and when there is no adequate remedy on appeal.  In re Kuntz, 124 S.W.3d 179, 180 (Tex.
2003) (orig. proceeding).  A trial court
clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992) (orig. proceeding).  A trial
court=s determination of
a factual issue is entitled to deference in a mandamus proceeding and should
not be set aside unless it is clear from the record that only one decision
could have been reached.  Kuntz, 124
S.W.3d at 181; Walker, 827 S.W.2d at 840.








Accordingly, the issue presented is
whether relators were clearly entitled to the specific relief they sought, i.e.,
whether the MDL Court acted arbitrarily and unreasonably by not granting
relators= motion.

The
Hearings

The MDL Court held
three hearings leading up to this mandamus proceeding.  The first hearing, conducted February 20,
2004, dealt with the parties= different
proposed docket control orders for the litigation.  The court allowed full discussion and stated
that it intended to have a docket control order in place within a week.  The court also stated an intent to form a
committee of representatives from all sides of the MDL docket to consult with
the court regarding the MDL docket procedures and, in fact, convened the first
committee meeting immediately following the hearing.








The second hearing
was conducted on April 19, 2004.  The
purpose was to hear arguments regarding the draft of the AFast Track Docket
Control Order@ that had been designed by the committee
appointed by the court.[2]  Thereafter, relators filed a pleading moving Athat the Court
establish an unimpaired docket for cases in which plaintiffs neither suffer
from malignancies nor satisfy objective criteria for functional impairment.@  The pleading acknowledged that the court had
already established a AFast-Track@ case management
system that gave seriously ill asbestos plaintiffs the opportunity to have
their cases certified and remanded for trial within six months.  The main focus of the pleading was on the
cases on a ANormal-Track@ schedule.  Under relators= proposal, Aplaintiffs who
neither allege a malignant condition nor are capable of satisfying the ABA
Standard for Non-Malignant Asbestos-Related Disease Claims[3]
would have their claims stayed on an inactive docket.@  While on the inactive docket, the plaintiffs
would not be able to proceed with discovery, file pretrial pleadings, or
otherwise pursue their claims in court, but they would not lose their causes of
action for want of prosecution or running of the statute of limitations.  The stayed claims could then be reactivated
only under certain conditions.[4]  The plaintiffs filed responses objecting to
relators= motion.

On May 7, 2004,
the MDL Court conducted an evidentiary hearing on relators= motion.  Each side presented an expert witness.  Relators= expert testified
in support of adopting the ABA criteria, and the expert for the plaintiffs
testified against adopting the criteria. 
At the conclusion of the hearing, the court announced its decision to
sign an order denying the relief requested by relators.  The court also made findings of fact and
conclusions of law in support of its ruling.

Discussion

Applying the
established standard of review for this mandamus proceeding, particularly in
light of the testimony of the dueling experts, we cannot say that the MDL Court
acted arbitrarily and unreasonably when it denied relators= motion.








Relators argue that,
even if we conclude the court=s denial of the
motion was not arbitrary and unreasonable, we should still grant mandamus
relief if the court stated erroneous reasons in its conclusions of law.[5]  Relators state that A[t]he tenet of
mandamus jurisprudence that a trial judge does not abuse his discretion where
he >reaches the right
result for the wrong reasons,= In re
ExxonMobil, 97 S.W.3d 353, 358 n.5 [(Tex. App.CHouston [14th
Dist.] 2003, orig. proceeding)], does not alter the analysis,@ citing two cases
in support of their position.  However,
relators= cases are
distinguishable.

In Huie v.
DeShazo, 922 S.W.2d 920 (Tex. 1996) (orig. proceeding), material facts were
undisputed (there was an attorney/trustee relationship), and the trustee was
entitled as a matter of law to the relief sought, the protection afforded by
the attorney/client privilege. Id. at 923-25.  Similarly, in National Union Fire
Insurance Co. v. Ninth Court of Appeals, 864 S.W.2d 58 (Tex. 1993) (orig.
proceeding), the material facts were undisputed (the explanation given by the
appellant in support of its motion for an extension of time to file the
statement of facts), and the explanation given was reasonable as a matter of
law so appellant was entitled to the relief sought, the filing of the statement
of facts.  Id. at 60-62.  In contrast, in the present case, the
material facts are disputed (the validity of the ABA criteria called the
AStandard for
Non-Malignant Asbestos-Related Disease Claims@), and relators
are not entitled as a matter of law to the relief sought, the
establishment of an unimpaired docket based on the ABA criteria,[6]
regardless of whether the court=s stated
conclusions of law are correct.[7]








It is clear from
the records from all three hearings, as well as from the court=s standing Case
Management Order, that the MDL Court is diligently attempting to deal
efficiently with the difficult and challenging issues presented by the massive
MDL docket.  No abuse of discretion has
been shown.

Conclusion

We deny relators= petition for writ
of mandamus.

 

PER CURIAM



Petition Denied and Opinion filed
September 23, 2004.

Panel consists of Justice Edelman,
Senior Chief Justice Murphy, and Senior Justice Mirabal.[8]

 











[1] In 2003, the
Texas Legislature created the Judicial Panel on Multidistrict Litigation (the
MDL Panel).  See Tex. Gov=t Code Ann. '' 74.161-74.164 (Vernon Supp. 2004).  The legislation authorizes the MDL panel to Atransfer civil actions involving one or more common
questions of fact . . . to any district court for consolidated or coordinated
pretrial proceedings, including summary judgment or other dispositive motions,
but not for trial on the merits.@  Id. '
74.162.  Further, the Texas Supreme Court
promulgated Rule of Judicial Administration 13, which grants an MDL pretrial
court broad power to manage transferred cases. 
Tex. R. Jud. Admin. 13, reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit. F app. (Vernon Supp. 2004).  In December 2003, the MDL Panel ordered the
transfer of three asbestos-related cases and all Atag
along@ cases to a single district judge, and thereafter, the
MDL Panel designated Judge Mark Davidson of the 11th Judicial District Court as
the pretrial judge to whom all post-September 1, 2003, asbestos cases would be
transferred.  Union Carbide v. Adams, No.
03-0895 (Tex. M.D.L. Panel Dec. 20, 2003) (order transferring cases); id.
(Jan. 13, 2004) (order designating Judge Davidson).

 





[2]  With our
permission, relators filed a Supplemental Record that contains the MDL Court=s standing Case Management Order, signed on July 29,
2004.  This order provides for creation
of a AFast-Track Docket,@ as was
previously proposed.

 





[3] In February 2003, the American Bar Association House
of Delegates passed a resolution calling on Congress to enact legislation
providing for a national unimpaired docket, and in connection with this
resolution, the ABA promulgated a set of medical criteria called the AStandard for Non-Malignant Asbestos-Related Disease
Claims.@  Congress has
not enacted the proposed legislation.





 

[4] Under relators=
proposal, the plaintiffs could Aactivate@ or Aremove@ their claims to the active docket if (1) they later
developed asbestos-related symptoms meeting the ABA criteria, or (2) the MDL
Court determined that sufficient more serious cases had been resolved to create
room on the active docket.

 





[5] The court=s conclusions of law were: (1) creation of an inactive
or unimpaired docket is a violation of the Texas Constitution; (2) creation of
an inactive or unimpaired docket is a violation of Rule 13 of the Rules of
Judicial Administration; and (3) refusal of the court to attempt to prepare a
case for trial and to set a case for trial is a violation of Texas law.





[6] We review a
trial court=s ruling based on the relief requested in the trial
court.  Relators= motion sought to apply the ABA criteria, and the
focus of the evidentiary hearing was on the validity of the ABA criteria.





 

[7] Accordingly, we do not reach the issue of whether the
MDL Court=s conclusions of law are correct.

 





[8]Senior Chief Justice Paul Murphy and Senior Justice
Margaret Mirabal sitting by assignment.