In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00024-CV
_____

THE STATE OF TEXAS, Appellant

V.

J.E.J., Appellee

On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Cause No. X-2206

**OPINION**

In one issue, appellant the State of Texas challenges the trial court's order expunging J.E.J.'s record. The State contends the trial court erred by granting J.E.J.'s petition for a complete expunction rather than granting a partial expunction. We affirm the trial court's expunction order.

**I. BACKGROUND**

The Texas Department of Public Safety ("DPS") arrested J.E.J. on two separate occasions for one perjury offense that allegedly occurred on October 27,

1

2015.[1] On March 2, 2016, the State charged J.E.J. via Information alleging that J.E.J. lied under oath about whether another individual worked an extra pipeline job. A jury tried J.E.J., and after it failed to reach a verdict, the trial court granted a mistrial. The trial court then dismissed the perjury charge. At the time of the perjury charge, J.E.J. was a Liberty County Constable and is a licensed peace officer.

J.E.J. subsequently filed a Petition for Expunction and asserted that "prosecution of the person for the offense for which the person was arrested is no longer possible because the limitations period has expired." *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(B). J.E.J. further alleged that he had been released, the charge did not result in a final conviction, and there was no court-ordered community supervision under Texas Code of Criminal Procedure article 42.12 nor a conditional discharge under Texas Health and Safety Code Section 481.109. *See id.* The Petition for Expunction contained the requisite information from Texas Code of Criminal Procedure article 55.02, section 2(b), and J.E.J. verified his petition. *See id.* art. 55.02 § 2(b).

In its Response to J.E.J.'s Petition for Expunction, the State noted that as a licensed peace officer, J.E.J. could potentially act in his law enforcement capacity and bring criminal charges against others. The State sought to retain J.E.J.'s records, because "he is a certified peace officer in the State of Texas, and the State may be

---

[1]Perjury is a Class A misdemeanor. Tex. Penal Code Ann. § 37.02(b).

required to produce such documents to criminal defendants and their attorney." The State noted its disclosure obligation under Texas Code of Criminal Procedure article 39.14(h). The State argued that it "has an obligation to disclose [J.E.J.]'s criminal records and files to defendants in all pending and future cases where he was, is, or becomes an investigating officer in such case." The State also contended that it was in the "untenable position" of either committing a criminal offense by violating article 55.04 of the expunction statute or committing professional misconduct under Texas Disciplinary Rule 3.09(d).

The State asserted:

[I]f the Court does not allow that the prosecuting attorneys to retain the records and files in this case but orders that all records be expunged, then, based on their memory of the [J.E.J.] case they are obligated to disclose such information under art. 39.14 of the Texas Code of Criminal Procedure to a criminal defendant relative to a case that [J.E.J.] was/is involved as an investigation officer. At that point in time, the prosecutor has committed a Class "B" misdemeanor for violating the expunction statute. Tex. Code Crim. Pro[c]. art. 55.04. Conversely, if the prosecutor does not disclose the information because the Court ordered that the records be expunged, and the prosecutor does not want to go to jail, then the prosecutor has violated their ethical obligation of disclosure under the Rule 3.09(d) of the Texas Rules of Disciplinary Procedure. At that point, the prosecutor is subject to disbarment for an ethical violation. Fortunately, art 55.02, section 4 (a-2)(2)(A) of the Texas Code of Criminal Procedure provides a solution for this untenable position by authorizing this Court to allow the Texas Department of Public Safety and the Jefferson County District Attorney's Office to retain the relevant records and files.

3

The State then requested the Court deny the Petition for Expunction, or in the alternative, order that the DPS and the Jefferson County District Attorney's Office retain all records and files.

The trial court held a hearing on the Petition for Expunction, during which J.E.J. argued that he is entitled to an expunction per the statute and asked the trial court to follow the law as written. J.E.J. countered that the State's arguments dealt with possibilities, the information was not exculpatory, and once the trial court signs the order, the State is prohibited from disclosing information, and its duty no longer exists. J.E.J. further argued that he should not be treated differently because he is a constable, and if questioned about his arrest during a criminal case, the statute requires J.E.J. to say he was arrested and it was expunged.

At the hearing, the State claimed that it was in a "no-win situation" between *Brady*, the Michael Morton Act, and the expunction statute.[2, 3] The State also contended that *Brady* and the Michael Morton Act do not give prosecutors discretion

---

[2] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution").

[3] In 2013, the Texas Legislature statutorily addressed the disclosure requirements of prosecutors in the Michael Morton Act. *See* Act of May 16, 2013, 83rd Leg., R.S., ch. 49 (S.B. 1611) (codified at Tex. Code Crim. Proc. Ann. art. 39.14) (amending subsection (a) and adding subsections (c) through (n) to section 39.14). In this opinion, we will cite the current version of Texas Code of Criminal Procedure article 39.14 because the subsequent amendment does not affect the outcome of this appeal.

to determine whether information is material or exculpatory. The State requested a partial expunction that allowed the District Attorney's office and investigating agency to retain the records, because the State may need them in a future criminal prosecution.

The trial court granted a complete expunction and did not allow any agency to retain J.E.J.'s arrest records. The trial court's order noted J.E.J.'s entitlement to expunction under article 55.01(a)(2). *See id.* art. 55.01(a)(2).

## II. STANDARD OF REVIEW

We review a trial court's ruling on a petition for expunction for an abuse of discretion. *State v. T.S.N.*, 547 S.W.3d 617, 620 (Tex. 2018). Under the abuse of discretion standard, we afford no deference to the trial court's legal determinations since a court has no discretion in deciding what the law is or applying the law to the facts. *See id.* Therefore, we review a trial court's legal conclusions *de novo*. *See id.* Because the trial court's ruling on the expunction request involved a question of law requiring statutory construction and interpretation, we review it *de novo*. *See id.*

## III. ANALYSIS

### A. Law

**1. Applicable Provisions of the Expunction Statute**

Texas Code of Criminal Procedure article 55.01 contains the requirements for expunctions of criminal records. *See* Tex. Code Crim. Proc. Ann. art. 55.01; *T.S.N.*,

5

547 S.W.3d at 620. An individual must meet all statutory requirements before being entitled to an expunction. *T.S.N.*, 547 S.W.3d at 620. Because expunction is a privilege defined by the Legislature, not a common-law or constitutional right, "the statutory requirements are mandatory and exclusive and may not be equitably expanded by the courts." *Ex parte R.P.G.P.*, 623 S.W.3d 313, 316 (Tex. 2021).

J.E.J. sought expunction pursuant to subsection (a)(2)(B), which provides:

(a) A person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if:
. . .

(2) the person has been released and the charge, if any, has not resulted in a final conviction and is no longer pending and there was no court-ordered community supervision under Chapter 42A for the offense, unless the offense is a Class C misdemeanor, provided that:
. . .

(B) prosecution of the person for the offense for which the person was arrested is no longer possible because the limitations period has expired.

Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(B).[4] Texas Code of Criminal Procedure article 55.02 outlines the expunction procedures. *See id.* art. 55.02. Subsection 4(a-2) allows for the retention of records in some instances and provides that

---

[4]The Texas Supreme Court recently concluded that the current language in article 55.01(a)(2) is offense-based for misdemeanors, not arrest-based. *See Ex parte R.P.G.P.*, 623 S.W.3d 313, 322-23 (Tex. 2021). Specifically, after contrasting the language of (a)(2) with (a)(2)(A), the court determined that (a)(2)(A)'s language "demonstrates that an offense-based interpretation applies to misdemeanors while an arrest-based interpretation applies when much more serious crimes—felonies—

6

. . . In the case of a person who is the subject of an expunction order on the basis of an acquittal, the court may provide in the expunction order that the law enforcement agency and the prosecuting attorney retain records and files if:

(1) the records and files are necessary to conduct a subsequent investigation and prosecution of a person other than the person who is the subject of the expunction order; or

(2) the state establishes that the records and files are necessary for use in:

(A) another criminal case, including a prosecution, motion to adjudicate or revoke community supervision, parole revocation hearing, mandatory supervision revocation hearing, punishment hearing, or bond hearing; or
(B) a civil case, including a civil suit or suit for possession of or access to a child.

*Id.* art. 55.02 § 4(a-2). The Texas Code of Criminal Procedure further provides that

[w]hen the order of expunction is final:

(1) the release, maintenance, dissemination, or use of the expunged records and files for any purpose is prohibited;

(2) except as provided in Subdivision (3) of this article, the person arrested may deny the occurrence of the arrest and the existence of the expunction order; and

(3) the person arrested or any other person, when questioned under oath in a criminal proceeding about an arrest for which the records have been expunged, may state only that the matter in question has been expunged.

---

are involved." *Id.* at 323; *see also Ex parte R.J.F.*, 640 S.W.3d 365, 369 n.1 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (discussing *R.P.G.P.*).

7

*Id.* art. 55.03. Finally, a State officer or employee "who knows of an order expunging the records and files relating to that arrest commits an offense if he knowingly releases, disseminates, or otherwise uses the records or files." *Id.* art. 55.04 § 1. Violating an expunction order is a Class B misdemeanor. *Id.* art. 55.04 § 3.

## 2. Prosecutorial Disclosure Requirements

The State argues that its various prosecutorial disclosure obligations require it to turn over potentially exculpatory information pertaining to J.E.J.'s arrest in future cases where he is involved as a law enforcement officer. The State believes such disclosure would require prosecutors to violate article 55.04 of the expunction statute by disclosing the information. On the other hand, the State argues, by following the expunction statute and not disclosing the information, it will violate the Michael Morton Act and other ethical rules.

The State first cites to its obligation under Texas Code of Criminal Procedure article 39.14(h), which provides,

> Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense.

*Id.* art. 39.14(h).[5]

---

[5]The State also generally cited to *Brady v. Maryland*, 373 U.S. 83 (1963) in its brief as governing its disclosure requirements. However, the 2013 amendments to article 39.14 encompassed in the Michael Morton Act were broader, not

The Texas Disciplinary Rules of Professional Conduct also govern a prosecutor's conduct in criminal matters. In pertinent part, those rules provide that

> [t]he prosecutor in a criminal case shall:
>
> . . .
>
> (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal[.]

Tex. Disciplinary Rules Prof'l Conduct R. 3.09(d), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Additionally, Rule 3.04(a) states that "[a] lawyer shall not . . . unlawfully obstruct another party's access to evidence; in anticipation of a dispute unlawfully alter, destroy or conceal a document or other material that a competent lawyer would believe has potential or actual evidentiary value; or counsel or assist another to do any such act." *Id.* R. 3.04(a).

---

dependent on materiality, and created an ongoing duty of disclosure. *See Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021) (discussing broadened obligations under the Michael Morton Act). Given the greater breadth of the Michael Morton Act's disclosure requirements, we address the State's obligations under it.

### 3. Code Construction Act[6]

When construing statutes, our primary goal is to ascertain and give effect to the legislature's intent. *See* Tex. Gov't Code Ann. § 312.005; *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). To determine the Legislature's intent, we begin with the statute's words and give them their plain and common meaning unless a contrary intention is apparent from the context or such a construction leads to absurd results. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014); *see also* Tex. Gov't Code Ann. § 311.011(a). We read words and phrases in context and construe them according to rules of grammar and common issue, and construe technical meanings accordingly. *See* Tex. Gov't Code Ann. § 311.011(a). We analyze statutes "'as a cohesive, contextual whole'" to try to effectuate the Legislature's intent and presume the Legislature intended a "'just and reasonable result.'" *See R.P.G.P.*, 623 S.W.3d at 317 (quoting *T.S.N.*, 547 S.W.3d at 620); *see also* Tex. Gov't Code Ann. § 311.021. In construing a statute, among other things, we may consider the "object sought to be attained[]" and "consequences of a particular construction[.]" Tex. Gov't Code Ann. § 311.023. Generally, for an unambiguous statute, "'a court should not use rules of construction or extrinsic aids to construe it, but should give the statute its common meaning.'" *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994)

---

[6]*See* Tex. Gov't Code Ann. §§ 311.001–.032.

(citations omitted). Section 311.025 of the Code Construction Act applies to irreconcilable statutes. *See* Tex. Gov't Code Ann. § 311.0025. "If two statutes are in conflict, 'we will construe the different provisions in a way that harmonizes rather than conflicts.'" *Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 122 (Tex. 2017) (quoting *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015)).

### B. Application

The State argued in the trial court and initially on appeal that it was entitled to retain the records pursuant to article 55.02, section 4(a-2). *See* Tex. Code Crim. Proc. Ann. art. 55.02 § 4(a-2). That subsection permits the trial court to allow the applicable law enforcement agency and prosecuting attorney to retain records and files of someone "who is the subject of an expunction order *on the basis of an acquittal*[.]" *See id.* (emphasis added). J.E.J.'s expunction was not based on acquittal. Rather, in his case, the charge had not resulted in a final conviction, the charge was dismissed, and the statute of limitations expired.[7] *See id.* art. 55.01(a)(2)(B). The State conceded in post-oral argument briefing that section 4(a-2) does not apply in this case, because J.E.J.'s expunction was not based on an acquittal. We agree.

---

[7]The Class A misdemeanor offense of perjury has a two-year statute of limitations. *See* Tex. Code Crim. Proc. Ann. art. 12.02(a).

11

The expunction statute provides limited circumstances in which a trial court may permit a law enforcement agency or prosecutor to retain records once an individual has shown themselves entitled to an expunction. Those circumstances include: (1) if the State establishes the person subject of the expunction order is still subject to conviction for an offense arising out of a transaction for which they were arrested because the statute of limitations has not run and reasonable cause exists that the State may proceed against the person for the offense; (2) for any person entitled to an expunction of records based on the expiration of a period in Article 55.01(a)(2)(A)(i)(a), (b), or (c); or (3) when an individual obtains an expunction on the basis of an acquittal if the records and files are necessary for a subsequent investigation and prosecution of someone else or if the State establishes the records and files are necessary for use in another criminal or civil case. *See id.* 55.02 § 4(a), (a-1), (a-2).

> When examining section 4(a) and (a-2), our sister court in Dallas explained,
>
> As reflected in the unambiguous language of the statute, the statutory exception applies to cases resulting in an acquittal. . . . There was no acquittal here. . . .The only other statutory exception allowing the State's retention of files that might otherwise be expunged pertains to cases in which a person is still subject to conviction because the statute of limitations has not run, and that exception is also not applicable here.

*Matter of Ross*, No. 05-19-01545-CV, 2021 WL 2948585, at *4 (Tex. App.—Dallas June 30, 2021, no pet.) (mem. op.) (internal citations omitted). The expunction statute does not authorize the retention of records or files for an individual who

12

receives an expunction based upon article 55.01(a)(2)(B). In the face of the Legislature's silence and unambiguous language enumerating specific circumstances permitting retention of records, we will not read an additional exception into a statute.

Despite the State acknowledging that the referenced statutory provision under which it sought the retention of records and files does not apply, it nonetheless contends that we should permit it to retain the records and files because an irreconcilable conflict exists between the expunction statute and its duties to disclose exculpatory or impeachment information pursuant to the Michael Morton Act and Texas Disciplinary Rules of Professional Conduct. The State points to no specific proceeding or case where records or files pertaining to J.E.J.'s arrest and expunction are needed for impeachment purposes. Rather, the State asserts that because he is a peace officer, J.E.J. could be a witness in future criminal proceedings, therefore it should be permitted to retain the records or else the State would be forced to violate its disclosure obligations.

The State asserts an "irreconcilable conflict" exists and advocates for us to apply section 311.025 of the Code Construction Act, which it contends leads to the conclusion the Michael Morton Act prevails, since it was passed after the expunction statute. *See* Tex. Gov't Code Ann. § 311.025. In the case before us, the State has failed to show that the Michael Morton Act is implicated. Instead, it asks us to

13

speculate that it may conflict with the expunction statute as it applies to J.E.J. and his potential testimony in some unknown future case. Moreover, the State's request is unlimited to J.E.J. It advocates that in all instances of expunctions involving peace officers, the State be permitted to retain records and thus, a peace officer would only be entitled to a partial expunction. The expunction statute and applicable provisions of the Michael Morton Act can be harmonized using their plain language, and therefore, an irreconcilable conflict does not exist.

Article 39.14(h) requires the State to disclose "information in the possession, custody, or control of the state . . . ." Tex. Code Crim. Proc. Ann. art. 39.14(h). Texas Code of Criminal Procedure article 39.14 does not define "possession, custody, or control[.]" *See generally id.*; *see also* Tex. Atty. Gen. Op. KP-0041 (2015) at *3. However, in the context of civil discovery, the Texas Supreme Court has noted the phrase *"[p]ossession, custody or control* of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person that has physical possession of the item." *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding) (quoting Tex. R. Civ. P. 192.7(b)). Once a trial court issues an expunction order requiring the return and/or obliteration of documents and preventing dissemination, the information is no longer in the State's actual possession, nor does it have a right to possession of the records or information equal or superior to the person that has physical possession of the item.

*See id.* Therefore, after the expunction order is final, the State would not have "possession, custody, or control" of the information triggering its duty to disclose. The expunction statute provides that "the person arrested or any other person, when questioned under oath in a criminal proceeding about an arrest for which the records have been expunged, may state only that the matter in question has been expunged." Tex. Code Crim. Proc. Ann. art. 55.03(3).

Under the construction the State advocates, it would be entitled to retain the records of potential witnesses, because the State "may" at some point in the future have to disclose them as impeachment or exculpatory information. The State seeks a blanket holding that J.E.J. and any other peace officer would not be entitled to an expunction because of their status as peace officers since the records could be considered exculpatory or potentially impeach a witness's credibility, not based on any factual showing that such a scenario existed. The State's argument carried to its logical conclusion could theoretically be true of any individual granted an expunction who later becomes a witness in a criminal prosecution and ignores the absurd results that would ensue. For example, consider the regular citizen granted an expunction, who later becomes an eyewitness to a crime; under the State's logic those arrest records would be subject to the same disclosure requirements as

15

exculpatory or impeachment information.[8] If the prosecution's authority to retain records hinged on whether an arrestee might someday be a witness in an unrelated criminal proceeding, the expunction statute would be rendered meaningless.

With respect to a prosecutor's ethical obligations pursuant to Texas Disciplinary Rules of Conduct 3.09(d) and 3.04(a), we let the plain language guide us and believe these can also be harmonized with the expunction statute. Rule 3.09(d) requires a prosecutor to disclose all evidence or information known to the prosecutor that "tends to negate the guilt of the accused or mitigates the offense." Tex. Disciplinary Rules Prof'l Conduct R. 3.09(d). The information before us pertaining to J.E.J.'s perjury charge does not allow us to conclude that it "tends to negate the guilt of the accused or mitigates the offense." *Id.* Nor has the State attempted to show that this charge against J.E.J. would tend to negate the accused's guilt or mitigate the offense. Contrary to the Michael Morton Act, which expressly calls for information in the prosecutor's "possession, custody, or control" that may impeach a witness, Rule 3.09(d) does not call for such. Further, Rule 3.04(a) says that "a lawyer shall not . . . *unlawfully* obstruct . . . alter, destroy or conceal a document or other material" a lawyer believes has potential or actual evidentiary value. *Id.* R. 3.04(a) (emphasis added). Where a trial court orders a statutory

---

[8]During oral argument, the State acknowledged this could apply to any person who became a witness, not just peace officers.

expunction and the prosecutor complies with a lawful court order, the prosecutor has not unlawfully engaged in prohibited conduct.

The plain language of the statute states that "unless the court provides for retention of records and files under Subsection (a-1) or (a-2), the provisions of Articles 55.03 and 55.04 apply to files and records retained under this section." Tex. Code Crim. Proc. Ann. art. 55.02 § 4(b). Because neither (a-1) nor (a-2) apply, the trial court correctly determined it could not order retention of records under these subsections.

The statutory language is unambiguous. "The legislature intended section 55.01 to permit the expunction of records of wrongful arrests." *Harris Cty. Dist. Atty's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex. 1991) (citing *Meyers v. State*, 675 S.W.2d 798, 799 (Tex. App.—Dallas 1984, no writ)). The Legislature also carved out exceptions in the expunction statute permitting the State to retain records in certain enumerated circumstances, none of which apply here. The State essentially asks us to rewrite the expunction statute to add an exception. "It is not our place to 'judicially amend the statute to add an exception not implicitly contained in the language of the statute.'" *In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 (Tex. 2019) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999)); *Lee v. City of Hous.*, 807 S.W.2d 290, 295 (Tex. 1991).

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a

17

separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1. "'Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Boykin v. State*, 818 S.W.2d 782, 786 (Tex. Crim. App. 1991) (citation omitted).

If the Legislature intended to carve out an exception permitting the retention of records in situations where an expunction was granted based on the expiration of the statute of limitations pursuant to 55.01(a)(2)(B) and those records may be needed to comply with the Michael Morton Act or other prosecutorial disclosure requirements, it will be a simple matter for them to amend the expunction statute to so provide. *See Travis Cty. Atty. v. J.S.H.*, 37 S.W.3d 163, 167–68 (Tex. App.—Austin 2001, no pet.) (discussing "unadjudicated offenses" in the context of 55.01(a)(2)(B) and noting same).

We determine the trial court did not err by denying the State's request for a partial expunction unauthorized by statute. We further conclude that the statutes can be harmonized using the plain language the Legislature employed. Accordingly, we overrule the State's sole issue.

## IV. CONCLUSION

Having overruled the State's issue, we affirm the trial court's expunction order.

AFFIRMED.

$\overline{\hspace{4cm}}$
W. SCOTT GOLEMON
Chief Justice

Submitted on February 24, 2022
Opinion Delivered April 28, 2022

Before Golemon, C.J., Kreger, and Johnson, JJ.