Stuart SPITZER, M.D., Appellant,

v.

Madelon BERRY, Individually and as Personal Representative/Administrator/Executor of the Estate of Tommy Berry, Appellee.

No. 12–07–00276–CV.

Court of Appeals of Texas, Tyler.

Feb. 22, 2008.

---

Ty A. Bailey, for appellant.

Timothy W. Weltin, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## *OPINION*

BRIAN HOYLE, Justice.

Stuart Spitzer, M.D., appeals the trial court's order denying Spitzer's motion to dismiss a medical malpractice lawsuit filed against him by Madelon Berry. In his sole issue, Spitzer argues that the trial court erred in denying his motion to dismiss. We affirm.

### *BACKGROUND* [1]

Berry brought her lawsuit against Spitzer in both her individual capacity and on behalf of the estate of Tommy Berry, her late husband. On June 9, 2004, the decedent underwent colonostomy reversal and hernia repair operations performed by Spitzer. After surgery, Spitzer placed the decedent on an antibiotics regime, which was discontinued on June 22, 2004. Spitzer placed the decedent on a second antibiotics regime on June 26, 2004. On July 2, 2004, the decedent was transferred to another hospital and diagnosed with sepsis. The decedent died of cardiopulmonary arrest on July 10, 2004.

Berry filed a medical malpractice lawsuit against Spitzer and subsequently served Spitzer with a copy of an expert report written by Louis F. Silverman, M.D., a board certified general and thoracic surgeon practicing in Houston, Texas. Spitzer objected to Silverman's report and filed a motion to dismiss based on the allegation that the report failed to meet the requirements of an expert report under section 74.351 of the Texas Civil Practice and Remedies Code. The trial court denied Spitzer's motion to dismiss. This appeal followed.

### EXPERT REPORT

In his sole issue, Spitzer argues that the trial court should have dismissed Berry's lawsuit against him, alleging that Berry failed to timely provide him with an expert report meeting the requirements of section 74.351 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp.2007).[2] More specifically, Spitzer alleges that Dr. Silverman's report fails to sufficiently set forth a standard of care, a breach of that standard, and a causal link between a breach and the decedent's death.

### *Standard of Review*

An appellate court reviews a trial court's decision on a section 74.351 motion to dismiss for an abuse of discretion. *See Baylor Univ. Med. Ctr. v. Rosa,* 240 S.W.3d 565, 569 (Tex.App.-Dallas 2007, pet. filed) (applying prior supreme court precedent interpreting an earlier statute). The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations. *In re Doe,* 19 S.W.3d 249, 253 (Tex.2000) (citing *Bocquet v. Herring,* 972 S.W.2d 19, 20–21 (Tex.1998)). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000) (citing *Bocquet,* 972 S.W.2d at 21). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."

---

**1.** The facts set forth below have been gleaned from the allegations contained within Berry's amended petition, Berry's expert report, and Spitzer's motion to dismiss. Our opinion should not be construed as an evaluation of the veracity or merits of those allegations.

**2.** Because it is unnecessary to do otherwise, we have cited only the most current version of this statute in our opinion.

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). However, "a trial court has no discretion in determining what the law is or applying the law to the facts." *In re Kuntz,* 124 S.W.3d 179, 181 (Tex.2003) (orig.proceeding); *see also F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 694 (Tex.2007) ("[F]ailing to correctly apply the law is an abuse of discretion.").

### Failure to Serve a Section 74.351 Report

Texas Civil Practice and Remedies Code section 74.351 provides that, within 120 days of suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. *Ogletree v. Matthews,* —— S.W.3d —— (Tex., 2007) (citing Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)). These reports must identify the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Ogletree,* at —— (quoting Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6)). If a plaintiff does not serve a timely report, a trial court shall grant the defendant's motion to dismiss the case with prejudice. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b); *Ogletree,* at ——. An order that denies all or part of the relief sought in such a motion may be immediately appealed. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (Vernon Supp.2007) (authorizing interlocutory appeal from order that "denies all or part of the relief sought by a motion under Section 74.351(b)"); *Ogletree,* at ——.

### Sufficient and Deficient Expert Reports

■ Section 74.351 defines an expert report as follows:

"Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). Where a report is sufficient, the trial court must deny the defendant's motion to dismiss and allow the plaintiff's claims to proceed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351. A sufficient report is one that contains a "fair summary" of the standard of care, how that standard was breached, and how that breach caused the injury in question. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). A "fair summary" is "something less than a full statement" of the applicable standard of care, how it was breached, and how that breach caused the injury. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 880 (Tex.2001) (interpreting an earlier statute). Nonetheless, "a fair summary must set out what care was expected, but not given" and how that caused the injury. *See id.* "The expert report need not marshal every bit of the plaintiff's evidence." *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006) (interpreting an earlier statute). And a report's adequacy does not depend on whether the expert uses any particular "magic words." *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002) (also interpreting an earlier statute). But a "fair summary" is not a conclusory summary. *See id.*

■ As noted by the supreme court, when a report is deemed not served because it is deficient, the trial court retains discretion to grant a thirty day extension to cure the deficiency. *Ogletree,* —— S.W.3d at —— (citing Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c)). In the con-

text of deficient reports, section 74.351 mandates that "[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report [as set forth by section 74.351]." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). Where a report is deficient, but one that still "represent[s] an objective good faith effort," it is something less than a sufficient expert report, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c), but something more than mere conclusory allegations. *See Palacios*, 46 S.W.3d at 879.

 Addressing a previous, but similarly worded, version of the statute in question, the supreme court has explained that,

> [t]o constitute a "good-faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit.

*Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879). An expert report that is both deficient and still a "good faith effort" "need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three elements that the [statute] identifies: standard of care, breach, and causal relationship." *See Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878). A report that is a "good faith effort" "cannot merely state the expert's conclusions about these elements." *See Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879). "[R]ather, the expert must explain the basis of his statements to link his conclusions to the facts." *See Wright*, 79 S.W.3d at 52 (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.

1999)). Because the statute focuses on what the report discusses, the only information relevant to a consideration of a report's sufficiency and "good faith" nature "is within the four corners of the document." *See Palacios*, 46 S.W.3d at 878; *see also Jernigan*, 195 S.W.3d at 93; *Wright*, 79 S.W.3d at 52.

### Discussion

Dr. Silverman's report reads in pertinent part:

> [The decedent] ... underwent [various surgical procedures] on June 9, 2004, at East Texas Medical Center in Athens [performed] by Dr. Stuart Spitzer. His postoperative course was complicated by impaired respiratory function, a result of his known chronic obstructive pulmonary disease.... [A]ntibiotic therapy was initiated on June 9, 2004, the day of his initial operation. His respiratory status worsened, and on June 14, he was started on [a steroid regime]. On June 16, 2004, intestinal obstruction was diagnosed and [another surgical procedure was] carried out by Dr. Spitzer. His postoperative course remained stormy and primarily was manifested as respiratory and cardiopulmonary problems. On June 22, 2004, ... antibiotic therapy was terminated and ... steroid therapy continued. On June 26, 2004, antibiotic therapy was resumed.... His condition remained relatively stable, [although] his respiratory status remained worrisome, and he was transferred ... to East Texas Medical Center Specialty Hospital on July 2, 2004, for ongoing respiratory care.... [O]n admission to East Texas Medical Center Specialty Hospital, for the first time, wound drainage was noted.... Despite vigorous therapy ... sepsis progressed.... He succumbed to sepsis, going into irreversible cardiopulmonary arrest.

The standard of care for patients at risk of postoperative infection who are receiving steroid therapy is to maintain appropriate antibiotic coverage. Steroids are known to impair resistance to infection. [The decedent] underwent an operative procedure, i.e., colon surgery, where the risk of infection is significant. He was further debilitated by the need for a second operation to treat intestinal obstruction. He required ongoing steroid therapy for treatment of respiratory insufficiency. His antibiotic therapy was discontinued on June 22, 2004, and no antibiotic therapy was given until June 26, 2004. *More likely than not, this hiatus in antibiotic therapy allowed development and progression of the infections that led to irreversible sepsis and death. Had his antibiotic therapy been maintained, more likely than not, the lethal infections would not have developed and his death secondary to overwhelming sepsis not occurred. Dr. Spitzer's failure to maintain antibiotic therapy under these circumstances is clearly below standard and was, in all reasonable medical probability, a direct cause of [the decedent's] demise.* (emphasis added)

■ Spitzer alleges that Dr. Silverman's report fails to sufficiently set forth a standard of care, a breach of that standard, and a causal link between a breach and the decedent's death. As such, Spitzer argues that the trial court should have dismissed Berry's lawsuit against him. We disagree.

Dr. Silverman's report sets forth, in detail, the circumstances leading to the decedent's death and then sets forth the applicable standard of care, how that standard was breached, and how that breach caused the decedent's death. According to the report, the applicable standard of care was that "antibiotic therapy [should have] been maintained." The report states that "Dr. Spitzer's failure to maintain antibiotic therapy [was] clearly below standard" under the circumstances of an individual who had undergone colon surgery, then a second surgery, and whose resistance to infection was impaired by steroid therapy. As the report explains, "the risk of infection is significant" where an individual has undergone colon surgery. Finally, the report explains the causal relationship between that Spitzer's failure to maintain antibiotic therapy and the injury. According to the report,

... this hiatus in antibiotic therapy allowed development and progression of the infections that led to irreversible sepsis and death. Had his antibiotic therapy been maintained ..., the lethal infections would not have developed and his death secondary to overwhelming sepsis not occurred. Dr. Spitzer's failure to maintain antibiotic therapy under these circumstances is clearly below standard and was, in all reasonable medical probability, a direct cause of [the decedent's] demise.

This report was not deficient under the statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). Consequently, the trial court did not abuse its discretion by denying Spitzer's motion to dismiss. *See Honeycutt,* 24 S.W.3d at 360. Therefore, we overrule Spitzer's sole issue. *See Rosa,* 240 S.W.3d at 569.

## DISPOSITION

We ***affirm*** the trial court's order denying Spitzer's motion to dismiss.