# NO. 12-08-00464-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NEXION HEALTH AT SOUTHWOOD, INC.* *D/B/A SOUTHWOOD NURSING AND* *REHABILITATION CENTER; NEXION* *HEALTH OF OHI, INC.; AND* *PATRICIA A. JACKSON,* *APPELLANTS* | § | *APPEAL FROM THE 4TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *JACKIE JUDALET, INDIVIDUALLY* *AND AS REPRESENTATIVE OF THE* *ESTATE OF LORENE JONES,* *DECEASED,* *APPELLEE* | § | *RUSK COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Nexion Health at Southwood, Inc. d/b/a Southwood Nursing and Rehabilitation Center, Nexion Health of OHI, Inc., and Patricia A. Jackson appeal the trial court's order denying their second motion to dismiss a medical malpractice lawsuit filed against them by Jackie Judalet.[1]  In two issues, Nexion and Jackson argue that the trial court should have granted their second motion to dismiss and awarded them attorney's fees and costs.  We reverse and remand.

### BACKGROUND[2]

Nexion owned and operated Southwood Nursing and Rehabilitation Center in Henderson, Texas.  Jackson was an employee of Southwood at the time of the incident made the basis of this lawsuit.  On July 12, 2006, Judalet's mother, Lorene Jones, was admitted to Southwood for continued treatment of an infected decubitus ulcer.

---

[1] We will collectively refer to Nexion Health at Southwood, Inc. d/b/a Southwood Nursing and Rehabilitation Center, and Nexion Health of OHI, Inc., as "Nexion."

[2] The information set forth below has been gleaned from the allegations in Judalet's amended petition, Judalet's expert reports, and Nexion and Jackson's second motion to dismiss.  Our opinion should not be construed as an evaluation of the veracity or merits of those allegations.

On July 16, 2006, during her stay at Southwood, Jones fell while being transferred from her bed to a wheelchair by Jackson. Jones's care plan provided that her transfers be facilitated by two persons. Nonetheless, Jackson had been the only person facilitating the transfer in question. As a result of the fall, Jones suffered a fractured distal femur and was transported to a local hospital, where she underwent surgery to repair the fracture. Jones died on September 21, 2006. Her death certificate states that the immediate cause of her death was congestive heart failure.

## PROCEDURAL HISTORY

Judalet filed a medical malpractice lawsuit against Nexion and Jackson and timely served them with a copy of an expert report written by Gregory L. Colon, M.D., a board certified family practice physician, and a copy of Dr. Colon's curriculum vitae. Nexion and Jackson timely filed a motion to dismiss based upon allegations that Judalet had failed to meet the requirements of section 74.351 of the Texas Civil Practice and Remedies Code. In response, Judalet served Nexion and Jackson with an amended report by Dr. Colon, an additional report written by Jacqueline Barfknecht, a certified registered nurse practitioner, and a copy of Nurse Barfknecht's curriculum vitae. Nexion and Jackson timely filed a second motion to dismiss, asserting that Judalet still had not met the requirements of section 74.351. After a hearing, the trial court denied the second motion. Nexion and Jackson timely filed this interlocutory appeal.

## SECTION 74.351 EXPERT REPORTS

In their first issue, Nexion and Jackson assert that the trial court should have granted their second motion to dismiss. Specifically, they assert that Judalet failed to furnish expert reports sufficient to meet the requirements of section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2008).

**Failure to Serve an Expert Report**

Section 74.351 provides that, within 120 days of suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)). These reports must identify the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that

failure and the injury, harm, or damages claimed." ***Ogletree***, 262 S.W.3d at 319 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6)). If a plaintiff does not serve a timely report, a trial court shall grant the defendant's motion to dismiss the case with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); ***Ogletree***, 262 S.W.3d at 319. An order that denies all or part of the relief sought in such a motion may be immediately appealed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (authorizing interlocutory appeal from order that "denies all or part of the relief sought by a motion under Section 74.351(b)"); ***Ogletree***, 262 S.W.3d at 319.

## Sufficient and Deficient Expert Reports

Section 74.351 defines an expert report as follows:

> "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Where a report is sufficient, the trial court must deny the defendant's motion to dismiss and allow the plaintiff's claims to proceed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. A sufficient report is one that contains a "fair summary" of the standard of care, how that standard was breached, and how that breach caused the injury in question. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). A "fair summary" is "something less than a full statement" of the applicable standard of care, how it was breached, and how that breach caused the injury. ***Spitzer v. Berry***, 247 S.W.3d 747, 750 (Tex. App.–Tyler 2008, pet. denied) (quoting ***Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios***, 46 S.W.3d 873, 880 (Tex. 2001)). Nonetheless, "a fair summary must set out what care was expected, but not given" and how that caused the injury. ***Spitzer***, 247 S.W.3d at 750 (quoting ***Palacios***, 46 S.W.3d at 880). "The expert report need not marshal every bit of the plaintiff's evidence." ***Spitzer***, 247 S.W.3d at 750 (quoting ***Jernigan v. Langley***, 195 S.W.3d 91, 93 (Tex. 2006)). And a report's adequacy does not depend on whether the expert uses any particular "magic words." ***Spitzer***, 247 S.W.3d at 750 (quoting ***Bowie Mem'l Hosp. v. Wright***, 79 S.W.3d 48, 53 (Tex. 2002)). But a "fair summary" is not a conclusory summary. ***Spitzer***, 247 S.W.3d at 750 (citing ***Wright***, 79 S.W.3d at 53).

## Standard of Review

An appellate court reviews a trial court's decision on a section 74.351 motion to dismiss for an abuse of discretion. ***Spitzer***, 247 S.W.3d at 749. A trial court abuses its discretion when its decision

is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. ***K-Mart Corp. v. Honeycutt***, 24 S.W.3d 357, 360 (Tex. 2000). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 242 (Tex. 1985). However, a trial court has no discretion in determining what the law is or applying the law to the facts. ***Spitzer***, 247 S.W.3d at 750 (citing ***In re Kuntz***, 124 S.W.3d 179, 181 (Tex.2003) (orig. proceeding)).

**Dr. Colon's Opinion Regarding the Causal Connection Between the Transfer and Fall**

Judalet alleged that the damages in her health care liability claim flowed from Nexion's and Jackson's negligent causing of the decedent to suffer a fall and fracture her femur. Nexion and Jackson argue that ". . . Dr. Colon's amended report does not explain how the purported negligence caused [the decedent's] fractured femur, nor does the amended report mention that the fractured femur would not have occurred had she been transferred by two persons." We agree that Dr. Colon's report is devoid of such explanations.

Despite a careful review of Dr. Colon's report, we have not found one single instance in the report where Dr. Colon opines that the decedent's initial injury, the fracturing of her femur, was caused by Nexion or Jackson. In relevant part, Dr. Colon's report reads as follows:

> . . . Ms. Jones had to have emergency surgery to repair her fractured femur caused by her fall. . . .
>
> The initial nursing assessment/orders clearly stated that a two person transfer was required in order to move the patient and according to the notes only one person attempted to transfer Ms. Jones from her bed to a wheelchair. The Texas Department of Aging and Disability Services (DADS) reviewed the incident and substantiated negligence and cited two deficiencies as a result [of] their extensive investigation.
>
> . . . .
>
> In my opinion, the standard of care was breached regarding the transfer of this patient on 7-16-06 by the staff at Southwood Nursing and Rehabilitation Center. A two person transfer was required and only a one person transfer took place. The violations of care by Southwood Nursing and Rehabilitation Center were avoidable and preventable had these providers complied with a typical and reasonable level of care.

As is apparent from the report, Dr. Colon does not actually opine that any alleged breach of the standard of care caused the alleged injury to the decedent, the fractured femur. A sufficient report is one that contains a "fair summary" of the standard of care, how that standard was breached, and how that breach caused the injury in question. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Because Dr. Colon's report contained no such summary of causation, it is deficient. *See **id.***

4

**Dr. Colon's Opinion Regarding the Causal Connection Between the Fall and Death**

In addition to the above complaint, Nexion and Jackson also claim that Dr. Colon's report "failed to establish the causal relationship between . . . Ms. Jones's leg fracture[] and her death two months later due to congestive heart failure." According to Nexion and Jackson, Dr. Colon "utterly failed to explain the causative steps from Ms. Jones's broken leg to her death . . . ." They assert that "Dr. Colon made no attempt at all to explain how a fractured leg caused her to experience congestive heart failure." They allege that Dr. Colon's report references the decedent's death certificate, "which identified . . . congestive heart failure as the primary cause of her death." Finally, they argue that ". . . Dr. Colon's opinion on causation is conclusory because he failed to rule out other probable causes of Ms. Jones's injuries and death."

Dr. Colon stated in his report that "[i]n [his] medical opinion, there is reasonable medical certainty that Ms. Jones['s] ultimate demise was precipitated from her femur fracture/fall while under the care of Southwood Nursing and Rehabilitation Center on 7-16-06." He noted that she was "relatively healthy" until she sustained her fall and that her femur was broken by the fall. He noted that surgery was required to repair her femur, and that the decedent required a blood transfusion after the surgery. According to Dr. Colon, "[i]n a person known to have congestive heart failure, a major surgery and a blood transfusion can easily exacerbate . . . congestive heart failure." He also noted that there is a "post-operative" "major risk factor for pulmonary emboli and deep venous thrombosis" and that the decedent developed these complications following her surgery. He noted that the decedent's medical records indicated that she suffered from congestive heart failure, but it was "clinically stable" at the time she entered Southwood, and that there was no mention of "previous pulmonary emboli or deep venous thrombosis."

Dr. Colon noted that he had "taken into consideration" the "factors" of "Congestive heart failure[,] Stage IV," "Decubitus ulcer sacrum," "DVT," "MRSA," and "Post-op anemia." He then opined that, after such consideration, he "found that [the decedent's] congestive heart failure exacerbation following the surgery after her fall was a significant factor in her deterioration and ultimately her death." He concluded the pertinent part of his report as follows:

Ms. Jones was supposed to be in the Rehab center for only twenty days and return back to live with her daughter after that time period. Unfortunately[,] after her fall and fractured leg, she continued on a downward spiral after surgery causing her DVTs and severe CHF; ultimately causing her death. Instead of returning home with her daughter as planned, she returned home on hospice care and passed away slightly more than 2 months after her "fall."

Dr. Colon opined that the decedent's fall caused her death. However, he failed to explain the causal relationship between the decedent's leg fracture and her death. Dr. Colon failed to explain how a fractured leg caused her to experience congestive heart failure. Finally, Dr. Colon's opinion on causation is conclusory because he failed to explain how he ruled out other probable causes of the decedent's death. As such, Dr. Colon's report is deficient. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

**Nurse Barfknecht's Opinion as to Causation**

Nexion and Jackson argue that Nurse Barfknecht was barred from offering an opinion as to the cause of the decedent's death because she was not a physician. We agree. Because Dr. Colon was the sole physician providing an expert report on behalf of Judalet, he was Judalet's only expert who was qualified to render an opinion regarding causation in the case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (stating that only a physician is qualified to render a section 74.351 expert opinion regarding causation in a health care liability claim); *see also **Talmore v. Baptist Hosps. of Se. Tex.***, No. 09-06-024-CV, 2006 WL 2883124, at *4 n.4 (Tex. App.–Beaumont Oct. 12, 2006, no pet.) (mem. op.) (nurse practitioner not qualified to render section 74.351 expert opinion as to causation). Further, it is undisputed that Judalet did not disclose Nurse Barfknecht's report for the purpose of addressing the cause of the decedent's broken femur or her death.[3] Therefore, regarding the issue of causation, Judalet relied solely on Dr. Colon's report.

---

[3] In their brief, Nexion and Jackson alleged that "**The Trial Court Abused Its Discretion When It Denied [Nexion's and Jackson's] Motion to Dismiss Because Nurse Barfknecht's Report Failed to Establish the Causal Relationship Between [Nexion's and Jackson's] Alleged Negligence and Ms. Jones's Death[.]**" In response, Judalet stated in her brief as follows:

> . . . In her report, *Barfknecht opines that [the nursing home] breached its standard of care* by failing to follow the two person transfer requirement which existed in Ms. Jones' care plan. (CR 053-062). Nurse Barfknecht's report was disclosed by Judalet to make [the nursing home] aware of the claims being made *in regards to nursing care* in compliance with TCPRC chapter 74 and is admissible under the standards set forth therein.

(emphasis added). We have interpreted this to be a concession by Judalet that she relied solely on Dr. Colon's report for the purpose of addressing causation. Further, this interpretation is supported by Nurse Barfnecht's report because that report purports to be limited to questions surrounding the standard of care and the breach of that standard, not causation.

**Abuse of Discretion**

The reports presented by Judalet were deficient because Dr. Colon, the only expert qualified to address causation, does not actually opine that any alleged breach of the standard of care caused the alleged injury to the decedent, the fractured femur. This failure is further exacerbated by Dr. Colon's deficient opinion as to the cause of the decedent's death. Consequently, the trial court abused its discretion by denying the motion to dismiss. *See Spitzer*, 247 S.W.3d at 750 (trial court has no discretion in determining what the law is or applying the law to the facts). We sustain Nexion and Jackson's first issue.

## ATTORNEY'S FEES

In their second issue, Nexion and Jackson assert that the trial court also abused its discretion by failing to award them attorney's fees and costs. In denying their second motion to dismiss, the trial court did not directly address the issue of fees and costs. As we set forth below, we are remanding this case to the trial court. The issue of attorney's fees should be remanded to the trial court to afford it the opportunity to consider the issue in light of this opinion. *See Jacks v. Bobo*, No. 12-07-00420-CV, 2009 WL 2356277, at *8 (Tex. App.–Tyler July 31, 2009, pet. filed) (mem. op.).

## DISPOSITION

Because we have sustained Nexion and Jackson's first issue, we reverse the trial court's denial of their second motion to dismiss and remand the case for consideration of whether to grant Judalet an extension to cure the deficiencies set forth above.[4] We also remand the issue of attorney's fees to the trial court for consideration in light of this opinion.

　　JAMES T. WORTHEN　
Chief Justice

---

[4] Nexion and Jackson asserted other grounds for reversal of the trial court's denial of their motion to dismiss. Specifically, they alleged that Dr. Colon was not qualified to render an opinion as to the applicable standard of care and that Dr. Colon had failed to actually render such an opinion. Despite having done so in the trial court, Nexion and Jackson did not challenge on appeal Nurse Barfknecht's qualifications to render an opinion as to the applicable standard of care. *See Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 536-37 (Tex. App.–Tyler 2008, pet. denied) (addressing the failure to raise an issue on appeal). Because Nexion and Jackson's causation argument is dispositive, we need not address the ramifications of such a failure, including whether we should review the two reports together where one report was unchallenged. *See* TEX. R. APP. P. 47.1. Nexion and Jackson did not raise an objection to Dr. Colon's identification of an applicable standard of care in their second motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *Ogletree*, 262 S.W.3d at 321-22; *see also* TEX. R. APP. P. 33.1. Because we have addressed causation only, we need not decide the ramifications of that failure. *See* TEX. R. APP. P. 47.1. We note, however, that Nexion and Jackson conceded in their second motion that ". . . Dr. Colon's amended report outlines the standards of care he believes were breached relative to the care provided to Lorene Jones . . . ."

Opinion delivered September 23, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)