# NO. 12-08-00084-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THOMAS LEE FITZPATRICK AND WIFE, JENNIFER FITZPATRICK, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #3* |
| *DAVID G. WATSON, M.D., APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Thomas Lee Fitzpatrick and Jennifer Fitzpatrick appeal the trial court's final judgment in a medical malpractice lawsuit they brought against David G. Watson, a former physician. In two issues, the Fitzpatricks argue that the trial court reversibly erred by excluding evidence that Watson had a history of cocaine use and was suffering from cocaine induced impairment at the time he treated Thomas Fitzpatrick's injured arm. We affirm.

### BACKGROUND

On July 6, 2002, Thomas Fitzpatrick accidentally broke through a glass window with his arm, resulting in a severe cut to the arm. His wife, Jennifer Fitzpatrick, immediately drove him to the emergency department of East Texas Medical Center (ETMC) in Tyler, Texas. At ETMC, Watson examined and treated Fitzpatrick. At the time, Watson was a licensed, board certified emergency medicine physician.

Watson examined Fitzpatrick, partially cleaned his wound, and sutured the wound closed. Watson subsequently ordered that Fitzpatrick be discharged with instructions to follow up with an orthopedic surgeon. He also prescribed pain medication for Fitzpatrick to take until he was able to be treated further by the surgeon.

The following day, after experiencing intense pain in his arm, Fitzpatrick was taken by his wife to Parkland Hospital in Dallas, Texas. An x-ray of Fitzpatrick's arm was made, which showed a foreign object in the arm. Parkland physicians determined that Fitzpatrick's ulnar nerve had been cut. Two days later, surgeons removed the foreign object, a glass shard, from Fitzpatrick's arm and attempted to repair the damage to his ulnar nerve. This repair attempt was only partially successful; Fitzpatrick now suffers from a permanent loss of use in his hand.

The Fitzpatricks sued Watson. They alleged that Thomas Fitzpatrick's ulnar nerve had not been cut at the time Watson examined him in the emergency department. Instead, they claimed that the glass shard left in Fitzpatrick's wound had cut the nerve sometime after his discharge from ETMC. They claimed Watson was negligent by failing to order an x-ray to check for any glass in the arm, and for suturing the wound closed despite suspecting glass might be present in the arm. The case was tried to a jury, who found that Watson was not negligent in his treatment of Fitzpatrick. The trial court subsequently signed a take nothing judgment. This appeal followed.

## EXPERT EXTRAPOLATION OF IMPAIRMENT

In their first issue, the Fitzpatricks complain that the trial court improperly excluded the expert testimony of Dr. George Glass.[1] Specifically, they complain that the trial court improperly excluded Dr. Glass's opinion that based upon Watson's admissions of regular cocaine use, it was possible to extrapolate that Watson was impaired at the time he treated Thomas Fitzpatrick.

### Standard of Review

We review a trial court's exclusion of expert testimony under an abuse of discretion standard of review. *See Neal v. Dow Agrosciences LLC*, 74 S.W.3d 468, 471 (Tex. App.–Dallas 2002, no pet.); *see also Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex. 1998). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). "The mere fact that a trial judge may decide a matter within

---

[1] The Fitzpatricks have stated three separate issues in their brief. Because their second and third issues, as stated, relate solely to harm, we have concluded that these issues are actually subparts of their first issue. Moreover, their first issue relates to both the reliability of expert testimony and the prejudicial effect of evidence concerning cocaine use. We have addressed these questions separately and, for ease of reference, refer to them as the Fitzpatricks' first and second issues, respectively.

his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 242 (Tex. 1985). However, a trial court has no discretion in determining what the law is or applying the law to the facts. ***Spitzer v. Berry***, 247 S.W.3d 747, 750 (Tex. App.–Tyler 2008, pet. denied) (citing ***In re Kuntz***, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding)). In conducting an abuse of discretion review, we examine the entire record. ***Mercedes-Benz Credit Corp. v. Rhyne***, 925 S.W.2d 664, 666 (Tex. 1996). When the trial court does not specify the ground on which it excluded the testimony, we will affirm the trial court's ruling if any ground is meritorious. ***Honeycutt***, 24 S.W.3d at 360.

Whether an expert's testimony is reliable is a preliminary question for the trial court. ***Gammill***, 972 S.W.2d at 720. In assessing the reliability of expert testimony, a trial court is not to determine whether an expert's conclusions are correct, but only whether the analysis used to reach those conclusions is reliable. ***Id.*** At 726. An expert's testimony can be unreliable if the expert draws conclusions based on a flawed methodology. ***Merrell Dow Pharms., Inc. v. Havner***, 953 S.W.2d 706, 714 (Tex. 1997). There also may be simply too great an "analytical gap" between the data and the opinion proffered for the opinion to be reliable. ***Gammill***, 972 S.W.2d at 726. A trial court is not required to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.[2] ***Id.***

**Discussion**

Dr. Glass is a board certified psychiatrist specializing in the treatment of drug addicted persons. Before trial, Watson filed a motion to exclude Dr. Glass's expert testimony as to his extrapolation opinion that Watson was experiencing cocaine induced impairment at the time he treated Thomas Fitzpatrick. Watson alleged that Dr. Glass's opinion suffered from an impermissible analytical gap, rendering it unreliable. The trial court excluded the testimony.

Dr. Glass's opinion was based upon an extrapolation from an admission by Watson that he had been "abusing cocaine regularly" for "a year to a year and a half." He also relied upon Watson's admission that for the "[l]ast 12 months," the "frequency per month" was "eight times per month, two times per week." Dr. Glass held the opinion that Watson "[c]ould have been

---

[2] The term "*ipse dixit*" means "something asserted but not proved" and is literally translated "he himself said it." ***Tennyson v. Phillips***, No. 12-02-00154-CV, 2004 WL 63158, at *9 n.12 (Tex. App.–Tyler Jan. 14, 2004, pet. denied) (mem. op.).

high, he could have been in withdrawal, he could have been right in the middle, but clearly, during the whole time, he was using cocaine." According to Dr. Glass, if Watson "had been using cocaine in the previous week or two, his occupational function was impaired." Dr. Glass explained that Watson's admitted cocaine habit "would affect his behavior and performance" because "he would be either on his way up or on his way down" at the time he treated Fitzpatrick. Dr. Glass reached his opinion as to Watson's impairment despite admitting that "we don't have a drug screen, we don't have any type of . . . urinalysis, we have nothing." Further, Dr. Glass never described his method of extrapolation and stated that he was unaware of the amounts of cocaine ingested by Watson or his "rate of consumption."

Watson did not dispute Dr. Glass's qualifications to render an expert opinion as to his alleged impairment. Nonetheless, he contended, and we agree, that there was an "analytical gap" in Dr. Glass's analysis of whether Watson was impaired when he treated Fitzpatrick. Because Dr. Glass failed to describe his methodology, the trial court was presented with an expert opinion that was ultimately no more than Dr. Glass's *ipse dixit*. *See **Tennyson v. Phillips***, No. 12-02-00154-CV, 2004 WL 63158, at *10 (Tex. App.–Tyler Jan. 14, 2004, pet. denied) (mem. op.) (describing a similar analytical gap). Based upon the record before us, we hold that the trial court did not abuse its discretion by excluding Dr. Glass's expert extrapolation opinion as to impairment. *See **id**.* (reaching a similar conclusion). We overrule the Fitzpatricks' first issue.

## OTHER EVIDENCE OF IMPAIRMENT

In their second issue, the Fitzpatricks challenge the trial court's exclusion of evidence that Watson was a user of cocaine and, as such, was impaired during his treatment of Thomas Fitzpatrick. This evidence included expert testimony that Watson was a regular cocaine user, as well as admissions by Watson himself as to his use of cocaine. The evidence also included expert testimony from Dr. Glass and Dr. Gary Freeman, a board certified orthopedic surgeon, that Watson was impaired during Fitzpatrick's treatment. Watson filed a motion to exclude evidence of use and impairment, arguing that the value of such evidence was substantially outweighed by the danger of unfair prejudice. The trial court granted the motion to exclude.

## Standard of Review

We review the trial court's exclusion of evidence, including expert testimony, under an abuse of discretion standard of review. ***Gregg County Appraisal Dist. v. Laidlaw Waste Sys.,***

*Inc.*, 907 S.W.2d 12, 19 (Tex. App.–Tyler 1995, writ denied); *see Neal*, 74 S.W.3d at 471. Under rule 403 of the Texas Rules of Evidence, a trial court may exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. As stated above, a trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *Honeycutt*, 24 S.W.3d at 360. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer*, 701 S.W.2d at 242.

**Dr. Freeman**

Unlike Dr. Glass, Dr. Freeman's expert opinion was not based upon any form of extrapolation. Instead, Dr. Freeman simply opined that Watson should have ordered that Fitzpatrick's arm be x-rayed in order to check for the presence of suspected glass. Dr. Freeman testified as follows regarding the correlation between Watson's failure to order an x-ray and impairment:

> [T]here are two [possible] reasons he didn't take the x-ray. One is he's dumb. He's not dumb. He's intelligent. He's got degrees. The other reason he didn't take the x-ray is he was not thinking clearly. Now, if that rises to impairment, then there it is. If it's conscious indifference, then there it is. But he was not thinking clearly. Therefore, arguendo, you would have to implicate the admitted use of drugs . . . .

However, Dr. Freeman failed rule out other possible causes of Watson's conduct. And the trial court had Watson's testimony before it. Watson, testifying as a formerly licensed and board certified emergency medicine physician, stated that he did not order an x-ray because he did not believe it was necessary. He believed that any harm to Fitzpatrick's nerves had already occurred and that any possible foreign object would not cause additional harm.

Dr. Freeman failed to show from his testimony that his opinion regarding impairment was anything more than one possible scenario. Instead, he merely applied "backwards reasoning" to Watson's treatment of Fitzpatrick: Watson did not order an x-ray, Watson was an admitted cocaine user, so Watson's cocaine use must have been the cause of Watson's failure to order an x-ray. *See Dudley v. Humana Hosp. Corp.*, 817 S.W.2d 124, 127 (Tex. App.–Houston [14th Dist.] 1991, no writ) ("Otherwise, we find ourselves reasoning backwards: the operation was not successful, the Doctor had some personal problems that were probably stressful, therefore the

Doctor's stress must have caused him to do some act of negligence that proximately caused the damage."). Such reasoning, in light of the serious nature of the excluded testimony, could have been considered insufficient to overcome a rule 403 prejudice objection. *See id.* (reaching a similar conclusion). Under these circumstances, we cannot say that the trial court abused its discretion by excluding Dr. Freeman's opinion under rule 403. *See id.*

**Dr. Glass**

In addition to his extrapolation opinion, Dr. Glass offered an opinion that Watson's decision to suture Fitzpatrick's arm and send him home without immobilization demonstrated such a deviation from appropriate care that, in light of Watson's history of drug abuse, it could be inferred that Watson was impaired. However, Dr. Glass admitted in his deposition that, with the exception of the above treatment, he was unable to point to any objective conduct by Watson that would demonstrate impairment.

This opinion suffers from the same failure as Dr. Freeman's opinion – the failure to show that impairment was anything more than one possible scenario. As above, this is because Watson offered another plausible reason for his care decisions. Therefore, as with Dr. Freeman, Dr. Glass's opinion could have been considered insufficient to overcome a rule 403 prejudice objection. *See id.* We cannot say that the trial court abused its discretion by excluding Dr. Glass's opinion under rule 403. *See id.*

**Evidence of Cocaine Use**

The remaining evidence of cocaine use includes Watson's admissions as well as other evidence of Watson's history of cocaine use. None of this evidence showed that Watson was actually impaired on the day he treated Thomas Fitzpatrick. Instead, it merely showed that impairment on that day was possible. And we have already determined that the trial court did not abuse its discretion by excluding the only evidence of Watson's actual impairment on the day in question – the expert testimony of Dr. Freeman and Dr. Glass.

Generally, drug use, without further evidence of negligence, is inadmissible. *See Bedford v. Moore*, 166 S.W.3d 454, 465 (Tex. App.—Fort Worth 2005, no pet.). That is, evidence of drug use must provide some explanation for the negligence and improper conduct. *See id.* However, this explanation was not present in the case before us because the evidence of drug use did not connect Watson's history of cocaine use to impairment at the time of Thomas Fitzpatrick's treatment. Therefore, the evidence did not connect that history to causation. *See id.*

("Further, because Dr. Drew could not identify any particular level of the drug in Moore's system at [the] time of the accident or state that the amount of the drug in her system was at a level at which any impairment could be adduced, there was no evidence that the presence of the drug was a causative factor in the accident."). We hold that the trial court did not abuse its discretion by excluding the proffered evidence.

**Conclusion**

The trial court did not abuse its discretion by excluding the expert opinions of Dr. Freeman and Dr. Glass. Further, the trial court did not abuse its discretion by excluding the remaining evidence of cocaine use. Therefore, we overrule the Fitzpatricks' second issue.


**DISPOSITION**

We *affirm* the judgment of the trial court.


**SAM GRIFFITH**
Justice


Opinion delivered January 29, 2010.
*Panel consisted of Worthen, C.J., Griffith, J. and Hoyle, J.*


(PUBLISH)