Opinion to: SR TJ EVK ERA GCH LCH JB JS MM TGT
















Opinioned issued August 31, 2010                                                                                                                                                                                                                              



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO.   01-09-00307-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



daniel darmadi, m.d., Appellant

 

V.

 

gene harshman, Appellee

 

 



On Appeal from the 133rd District Court

Harris County,
Texas

Trial Court Cause No. 2008-44005 

 

 



MEMORANDUM opinion

The sole
issue of this interlocutory appeal is whether the trial court abused its
discretion by not dismissing the medical negligence case against appellant,
Daniel Darmadi, M.D., because the expert report submitted on behalf of appellee,
Gene Harshman, did not satisfy the requirements of Chapter 74 of the Texas
Civil Practice and Remedies Code.  We
agree that the report was deficient and reverse and remand.

Background

Gene
Harshman’s uvula[1]
was lacerated during an endoscopic
retrograde cholangiopancreatography (ERCP) performed by Daniel Darmadi, M.D.  The laceration, which bled profusely due to
blood-thinning medication that Harshman was taking at the time, required
subsequent reparative surgery.  Harshman
asserts that the excessive bleeding created a life-threatening condition that
Dr. Darmadi improperly managed.

Following receipt
of the expert report and curriculum vitae of Harshman’s expert, Lige B.
Rushing, Jr., M.D., Dr. Darmadi objected to its sufficiency and subsequently filed
a motion to dismiss.[2]  After a hearing, the trial court denied Dr.
Darmadi’s motion to dismiss.  On appeal,
Dr. Darmadi argues that the trial court abused its discretion by finding that the
report satisfied the statutory requirements of Chapter 74.

Dr.
Rushing’s Expert Report

I.                 
Standard of Review

We review a trial court’s decision on
a motion to dismiss a case for failure to comply with section 74.351 for an
abuse of discretion.  See Am. Transitional Care Centers v.
Palacios, 46 S.W.3d 873, 877 (Tex. 2001); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(Vernon
Supp. 2009).  A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner
or without reference to any guiding rules or principles.  See Walker v. Gutierrez, 111 S.W.3d 56, 63
(Tex. 2003).  When reviewing matters
committed to the trial court’s discretion, we may not substitute our own
judgment for that of the trial court.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).  Although we defer to the trial court’s factual
determinations, we review questions of law de novo.  Rittmer v. Garza, 65 S.W.3d 718, 722
(Tex. App.—Houston [14th Dist.] 2001, no pet.). 
To the extent that resolution of the issue before the trial court
requires interpretation of the statute itself, we apply a de novo standard.  Buck v. Blum, 130 S.W.3d 285, 290 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).

II.              
Chapter 74 Expert Report Requirements

If, after hearing, it appears
that the report does not represent a good faith effort to comply with the
statutory definition of an expert report the trial court shall grant the
motion.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(1); see also id.
at § 74.351(r)(6); Palacios, 46
S.W.3d at 877.  An “expert report” for
the purposes of section 74.351(r)(6), must be
rendered by someone qualified to testify as an expert on the relevant medical
subject area.  See Hansen v. Starr, 123 S.W.3d 13, 20 (Tex. App.—Dallas
2003, pet. denied).  

Our evaluation requires a
determination of whether the report “represents a good-faith effort” to comply
with the statute.  Strom v. Mem’l Hermann Hosp. Sys., 110 S.W.3d
216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  Although the report need not marshal all of
plaintiff’s proof, it must include the expert’s opinions on the three statutory
elements—standard of care, breach, and causation.  See Palacios, 46 S.W.3d at 878, 880;
Spitzer v. Berry, 247 S.W.3d 747, 750 (Tex. App.—Tyler 2008, pet. denied)
(quoting Palacios, 46 S.W.3d at 880) (stating “fair summary” is
“something less than a full statement” of the applicable standard of care, how
it was breached, and how that breach caused the injury).  

In detailing these elements, the
report must provide enough information to fulfill two purposes if it is to
constitute a good faith effort.  Palacios,
46 S.W.3d at 879.  First, the report must
inform the defendant of the specific conduct the plaintiff has called into
question.  Id.  Second, the report must provide a basis for
the trial court to conclude that the claims have merit.  Id. 
A report that merely states the expert’s conclusions as to the standard
of care, breach, and causation does not fulfill these two purposes.  Id. 
The expert must explain the basis for his statements and link his
conclusions to the facts.  Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002) (citing Earle v. Ratliff, 998 S.W.2d 882, 890
(Tex. 1999)).  Further, in assessing the
report’s sufficiency, the trial court may not draw any inferences, and instead
must rely exclusively on the information contained within the four corners of
the report.  See Palacios, 46
S.W.3d at 878.

III.          
Adequacy of Dr. Rushing’s Expert Report

Dr. Darmadi argues that the proffered
expert report is insufficient because it does not provide a “fair summary” of Dr.
Rushing’s opinions regarding standard of care, breach and causation, and to the
extent that Dr. Rushing addresses these elements, those portions of the report
are conclusory.[3]  The only conduct Dr. Rushing appears to take
issue with is Dr. Darmadi’s management of Harshman’s post-ERCP care.  Specifically, in his report, Dr. Rushing
states in pertinent part:  

In my opinion, Dr. Darmadi
should have returned to the hospital and examined [Harshman] to determine the
site of the bleeding.  He should have
attended [Harshman] during this time and personally contacted the surgeon and
made sure that appropriate consultation and treatment was obtained.  He has an obligation to follow-up when there
is a complication for a procedure, which he performed.  Even though he was not qualified/able to do
[sic] to perform the reparative surgery, he should have been available and
facilitated this procedure and provide supportive care.

. . .

It is my opinion that Dr.
Daniel Darmadi did breach the standard of care when he failed to return to the
hospital to follow-up a post-procedure complication from the procedure that he
performed.  

Having done so, the report provided
Dr. Darmadi with a fair summary of Dr. Rushing’s opinions concerning the
applicable standard of care and how Dr. Darmadi failed to meet that standard of
care.  See Palacios, 46 S.W.3d at 880.  The report also informed Dr. Darmadi of the
specific conduct Harshman has called into question—Dr. Darmadi’s departure from
the hospital and his alleged failure to properly manage Harshman’s
post-procedure complications.  See id.
at 879.  Thus, pursuant to Palacios and its progeny, Dr. Rushing’s report is sufficient with
regard to standard of care and breach.

Dr. Rushing’s report, however, is
insufficient with regard to the element of causation because he does not link
Dr. Darmadi’s alleged conduct with Harshman’s injuries.  Although Harshman attempts to read such
causal links into Dr. Rushing’s report, we are neither allowed to draw such
inferences nor may we rely upon Harshman’s brief to supplement his expert’s
report on this issue.  See id. at
878 (requiring that court rely exclusively on information contained within four
corners of expert report).  Dr. Rushing’s
report, on its face, is completely devoid of any discussion of the required
element of causation.  See id. at
879 (report that omits any required statutory element—standard of care, breach,
and causation—cannot represent “good-faith effort” to comply with statute).  In light of this omission, it is apparent
that the trial court acted without reference to any guiding rules or principles
when it found that Dr.
Rushing’s report constituted a “good-faith effort” to comply with the statute.  Accordingly, the trial court abused its
discretion when it found Dr. Rushing’s report satisfied the requirements of
Chapter 74 with regard to the element of causation.

IV.          
Dr. Rushing’s Qualifications

In his second argument, Dr.
Darmadi contends that the proffered expert report is insufficient because it
fails to establish that Dr. Rushing is qualified to opine on the issue of
standard of care.[4]  Specifically, Dr. Darmadi argues that Dr. Rushing, a specialist
in geriatrics and rheumatology, is unqualified to opine as to the applicable
standard of care for a gastroenterologist’s post-ERCP care of a patient who
sustained a laceration of his uvula.

A person opining as to whether a
physician departed from accepted standards of medical care is considered an
“expert” so long as he or she is qualified to give such testimony under section
74.401.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A); see also id.
at § 74.401 (Vernon 2005). 
Section 74.401(a) provides that a person may qualify to opine on whether
a physician departed from accepted standards of medical care if that person (1)
is practicing medicine at the time such testimony is given or was practicing
medicine at the time the claim arose; (2) has knowledge of accepted standards
of medical care for the diagnosis, care, or treatment of the illness, injury,
or condition involved in the claim; and (3) is qualified on the basis of
training or experience to offer an expert opinion regarding those accepted
standards of medical care.   Id. at § 74.401(a); see also McKowen v. Ragston, 263 S.W.3d 157, 161 (Tex. App.—Houston
[1st Dist.] 2007, no pet.).

To determine whether an expert’s
training or experience yields sufficient qualifications to offer an expert opinion
regarding those accepted standards of medical care, we consider whether the
expert is (1) board certified or has other substantial training or experience
in the area of medical practice relevant to the claim and (2) actively
practicing medicine in rendering medical care services relevant to the
claim.  Tex.
Civ. Prac. & Rem. Code Ann. §
74.401(c); see Kelly v. Rendon, 255 S.W.3d 665, 674 (Tex. App.—Houston [14th Dist.]
2008, no pet.) (recognizing that section 74.401 “does not require a medical
expert be practicing in the exact same field as the defendant physician, but
instead must only be actively practicing medicine in rendering medical care
services relevant to the
claim”) (emphasis added); see, e.g., McKowen, 263 S.W.3d at 162, 167 (permitting infectious disease
physician to opine on defendant cardiothoracic surgeon’s standard of care with
respect to treatment of infection stemming from arteriovenus access graft). 

Dr. Rushing, who is board certified in Internal Medicine,
Geriatrics, and Rheumatology and an attending physician at Presbyterian
Hospital in Dallas, does not profess to have any experience with regard to the
relevant medical claim—post-procedure care and treatment of ERCP-related
complications, including excessive bleeding. 
Although he acknowledges in his report that “laceration[s] of the
oropharynx. . .and hemorrhage” are known complications associated with
endoscopic procedures, Dr. Rushing never states that he has experience treating
such complications.[5]  Rather than addressing this omission on the
part of his expert, Harshman simply argues that the treatment of post-ERCP
complications, including excessive bleeding, is “clearly within the purview of
an Internist/Geriatrician such as Dr. Rushing.” 

Although it might be reasonable
to infer
from the contents of his expert report and curriculum vitae that Dr. Rushing might
have acquired experience in the treatment and care of post-ERCP complications
including excessive bleeding, during his years of practice, or that he might
have knowledge of the standard of care applicable to the care or treatment of
such conditions, neither we nor the trial court are allowed to make any such inferences
regarding Dr. Rushing’s qualifications.  See Wright, 79 S.W.3d at 53; Hansen,
123 S.W.3d at 20 (stating that expert must show qualifications
in report).  In light of the fact
that Dr. Rushing never professed to have any knowledge of or experience in the
treatment of post-ERCP complications, such as excessive bleeding, we conclude
that the trial court acted without reference to guiding rules or principles
when determining that Dr. Rushing was qualified to opine on the issue of standard
of care, and so abused its discretion in finding the report to be
sufficient.  See Moore v. Gatica, 269 S.W.3d 134, 140 (Tex. App.—Fort Worth 2008,
pet. denied) (stating that expert report authored by person not qualified to
testify regarding standard of care is “cannot constitute an adequate report”).  

We sustain Dr. Darmadi’s sole issue.

V.              
30-Day Extension

Having determined that the trial
court abused its discretion in finding the expert report to be sufficient, we
must now determine the proper disposition of this case.  In his reply brief, Dr. Darmadi argues that
if we determine that the trial court abused its discretion in finding Dr.
Rushing’s report sufficient that we must either (1) reverse and remand for entry of judgment
dismissing the claims and awarding attorney’s fees and costs or (2) reverse and
render suit dismissed with prejudice because the report is actually “no report
at all” as to Dr. Darmadi and therefore remand for consideration of a 30-day
extension is inappropriate.

Two of the cases that Dr. Darmadi cites for this
proposition are distinguishable from the present case because those cases
involve reports that are not merely deficient, but rather non-existent, with
respect to particular defendants.  See Jernigan v. Langley, 195 S.W.3d
91, 93–94 (Tex. 2006) (stating that report that only mentioned defendant
physician in passing was no report as to that defendant); Garcia v.
Marichalar, 185 S.W.3d 70, 73–74 (Tex. App.—San Antonio 2006, no pet.) (stating
that report that failed to mention defendant physician was no report as to that
defendant); see, e.g., Olgetree v. Matthews,
262 S.W.3d 316, 320–21 (Tex. 2007) (“Indeed, the Legislature recognized
that not all initial timely served reports would satisfy each of the statutory
criteria.  As a result, the amendments
explicitly give trial courts discretion to grant a thirty-day extension so that
parties may, where possible, cure deficient reports.  In
this important respect, a deficient report differs from an absent report.”)
(emphasis added) (internal citation omitted).  The third case
Dr. Darmadi relies upon does not even support the proposition.  See
Austin Heart, P.A. v. Webb,
228 S.W.3d 276, 283–84 (Tex. App.—Austin 2007, no pet.) (distinguishing Jernigan and Garcia and finding report that failed to expressly articulate link
between defendant physician’s conduct and expert’s conclusions deficient, but
potentially curable, and remanding to trial court for consideration of whether
30-day extension was warranted). 

Contrary to Dr. Darmadi’s contention, when a report is
deficient—as opposed to absent—the proper disposition is to remand the
case to the trial court for consideration of whether a 30-day extension to cure
the deficiency is warranted.  See Leland
v. Brandal, 257 S.W.3d 204, 208 (Tex. 2008) (holding court of
appeals has discretion to remand case for consideration of thirty-day extension
to cure deficient expert report); Gardner
v. U.S. Imaging, Inc., 274
S.W.3d 669, 671 (Tex. 2008) (relying upon Leland;
expressly rejecting defendants’ contention that expert report which was conclusory
as to causation was so deficient as to constitute no report at all and vacating
judgment and remanding for consideration of thirty-day extension); cf. Scoresby v. Santillan, 287 S.W.3d
319, 324 (Tex. App.—Fort Worth 2009, pet. granted) (stating
that no Texas Supreme Court opinion has held that timely
served expert report which contains narrative that fails to include any expert
opinion on standard of care, breach, or causation is tantamount to no report at
all and thus ineligible for 30-day extension.) 
Having determined that Dr. Rushing’s report was sufficient, the trial
court did not consider whether Harshman was entitled to a 30-day extension.  Accordingly, we remand to the trial
court for it to determine whether such an extension is
warranted.

IV.    Harshman’s Request for Sanctions

In his response to Dr. Darmadi’s
appellate brief, Harshman requested that this Court
impose sanctions against Dr. Darmadi, presumably for not acting in good
faith, in the amount of $1,000 in attorney’s
fees.  See Tex. R. App. Proc.
52.11 (authorizing imposition of sanctions when party or attorney is not acting
in good faith as indicated by filing clearly
groundless petition, “bringing petition solely for delay of an underlying
proceeding,” “grossly misstating or omitting obviously important and material
fact in petition or response,” or “filing appendix or record that is clearly
misleading because of omission of obviously important and material evidence or
documents”).  It is not apparent
from the record before us that either Dr. Darmadi or his counsel has engaged in
any such conduct.  Harshman’s request for
sanctions is denied. 

CONCLUSION

We reverse
the trial court’s ruling denying Dr. Darmadi’s Motion to Dismiss and remand the
case for the trial court’s consideration of whether to grant a 30-day extension.
 See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).  We also deny Harshman’s request for
sanctions.

 

 

 

                                                          Jim
Sharp

                                                          Justice


 

Panel
consists of Justices Jennings, Higley, and Sharp.

 

 











[1]           The
uvula, which is part of the oropharynx, is the small fleshy lobe that hangs from the soft palate above the back of the tongue at
the entrance to the throat.





[2]          Section 74.351 of the Texas Civil
Practice and Remedies Code sets forth expert report requirements applicable to
medical malpractice cases.  See Tex.
Civ. Prac. & Rem. Code Ann. §74.351 (Vernon Supp. 2009). 
Pursuant to this section, all health care liability claimants
must serve an expert report, accompanied by the expert’s curriculum vitae, on
each party within 120 days of filing suit. 
Id. at §74.351(a).  The
defendant must then file and serve any objections to the sufficiency of the
report not later than the 21st day after the date report was served, or else
its objections are waived.  Id. 
The defendant may also file a motion with the trial court requesting
attorney’s fees and dismissal of the claims. 
See id. at § 74.351(b); see also Tex.
Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(9) (Vernon 2008)
(allowing appeal from interlocutory
order that denies all or part of relief sought by motion pursuant to
section 74.351(b)). 





[3]           In his petition, Harshman alleges
multiples theories of negligence on the part of Dr. Darmadi.  Specifically, Harshman appears to argue that
Dr. Darmadi was negligent in (1) his performance of the ERCP procedure, (2) his
decision to perform the procedure on a patient who was taking blood-thinning
medication and had been pain-free for sixteen hours, and (3) his management of
Harshman’s post-ERCP care, particularly with regard to the excessive
bleeding.  Although he appears to argue
on appeal that Dr. Rushing’s report does not provide a “fair summary” of his
opinions regarding standard of care, breach and causation with respect to any
of any of these theories, Dr. Darmadi does not argue nor does he direct us to
any authority requiring us to evaluate the sufficiency of the report with
respect to each separate negligence theory. 
Accordingly, we will limit our evaluation of the sufficiency of the
report to the only conduct that Dr. Rushing appears to take issue with—Dr.
Darmadi’s management of Harshman’s post-ERCP care.  In doing so, we are mindful of the fact that
section 74.351 is a “gate-keeping” provision designed to prevent frivolous or
premature lawsuits from proceeding until a good-faith effort has been made to
demonstrate that at least one expert believes that a breach of the applicable
standard of care caused the claimed injury. 
See Murphy v. Russell,
167 S.W.3d 835, 838 (Tex. 2005); Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(k), (t) (section 74.351 expert
reports are inadmissible in evidence, except under very limited circumstances).

 

 





[4]           In his
motion objecting to Dr. Rushing’s report and requesting dismissal pursuant to
section 74.351, Dr. Darmadi also challenged Dr. Rushing’s qualifications to opine
on the element of causation.  Although he
employs language in his brief which suggests that he is attempting to appeal
the trial court’s finding on this issue, Dr. Darmadi does not present any
argument or cite any authority in his brief regarding an expert’s
qualifications to opine with respect to causation in a Chapter 74 report.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(r)(5)(c) (setting forth qualification for expert opining on
causation).  Thus, to the extent that Dr.
Darmadi intended to appeal the trial court’s implicit finding that Dr. Rushing
is qualified to opine on causation, the issue was inadequately briefed, and
therefore waived.  See Tex. R. App. P. 38.1(i) (requiring that
appellant’s brief contain “a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record”).





[5]          The
oropharynx is the part of the throat at the back of the mouth behind the oral
cavity.  It includes the back third of
the tongue, the soft palate, the side and back walls of the throat, and the
tonsils.  The uvula is part of the soft
palate.